IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| IN RE: ATRIUM MEDICAL CORP. C-QUR MESH PRODUCTS LIABILITY LITIGATION (MDL 2753 | MDL Docket No.: 16-md-2753-LM |
| This Document Relates to:<br><br>MARY CLAIRE PHILLIPS AND JAMES PHILLIPS<br><br>Plaintiffs,<br><br>v.<br><br>ATRIUM MEDICAL CORPORATION,<br><br>Defendants. | Civil Action No.:<br><br>**COMPLAINT and JURY DEMAND** |

Plaintiffs, MARY CLAIRE PHILLIPS and JAMES PHILLIPS, for their Complaint against Defendant Atrium Medical Corporation, states as follows:

**PARTIES**

1. Plaintiffs MARY CLAIRE PHILLIPS and JAMES PHILLIPS are residents of 1550 Emit Deal Road, County of Bulloch, Georgia, and are now and have been at all relevant times citizens of Georgia and the United States.

2. Defendant Atrium Medical Corporation ("Atrium") is a Delaware corporation with its corporate headquarters and principal place of business located in Merrimack, New Hampshire. Defendant ATRIUM MEDICAL CORPORATION ("Defendant") is a domestic corporation organized and existing under the laws of Delaware with its principal place of business in New Hampshire. Atrium Medical Corporation identifies its registered agent for service of process as CT Corporation System, located at 9 Capitol Street in Concord, New Hampshire.

3. At all relevant times, Defendant Atrium designed, developed, manufactured, licensed, marketed,

1

distributed, sold and/or placed in the stream of commerce the Hernia Mesh Products, including certain Hernia Mesh Products at issue in this lawsuit.

4. At all times mentioned herein, Defendant Atrium acted, by and through their agents, representatives and employees who acted within the scope and course of their agency and employment.

5. At all relevant times, Defendant Atrium, was and still is a corporation authorized to do business in the State of New Hampshire.

6. At all times hereinafter mentioned, upon information and belief, the Defendant Atrium, was and still is a business entity actually doing business in the State of New Hampshire.

7. At all times hereinafter mentioned, the Defendant Atrium was and is engaged in the business of designing, manufacturing, advertising, marketing, and selling Hernia Mesh Products including the Atrium C-Qur Mesh V-Patch, and in pursuance of this business, transacts business within the State of New Hampshire and contracts to provide goods and services in the State of New Hampshire.

8. At all times hereinafter mentioned, upon information and belief, Defendant Atrium committed a tortious act inside the State of New Hampshire, which caused injury to Plaintiff inside the State of South Carolina.

9. At all times hereinafter mentioned, upon information and belief, Defendant Atrium expects or should reasonably expect its acts to have consequences in the State of Georgia, and derives substantial revenue from interstate or international commerce.

10. At all times mentioned herein Defendant acted by and through its agents, representatives, and employees who acted within the scope and course of their agency and employment.

## **VENUE AND JURISDICTION**

11. This Court has jurisdiction pursuant to 28 U.S.C. §1332(a) and (c).

12. Venue is proper in this District pursuant to 28 U.S.C § I391(b), (c) and (d) because Defendant resides in this District, a substantial part of the events or omissions giving rise to the claim occurred in this District, and this Court has personal jurisdiction over Defendant.

## FACTUAL ALLEGATIONS AND CAUSES OF ACTION

13. Defendant Atrium Medical Corporation developed the C-QUR Mesh for use in hernia repair to act as reinforcement with a non-absorbable supportive material. Atrium has stated C-QUR Mesh combines Atrium's polypropylene mesh with an absorbable Omega 3 gel coating, referred to herein at times as "0 3FA." The 03FA coating is derived from highly purified pharmaceutical grade fish oil consisting of a unique blend of triglycerides and Omega 3 fatty acids.

14. Prior to and in 2006, Defendant sought and obtained Food and Drug Administration (" FDA") approval to market the Atrium C-QUR Mesh Products under Section 51O(k) of the Medical Device Amendment.

15. Defendant's C-QUR Mesh Products were marketed to the medical community and to patients as safe, effective, reliable, medical devices for the treatment of hernia repair, and as safer and more effective as compared to the traditional products and procedures for treatment, and other competing mesh products.

16. Defendant marketed and sold the C-QUR Mesh Products to the medical community at large and patients through carefully planned, multifaceted marketing campaigns and strategies. These campaigns and strategies include, but are not limited to, aggressive marketing to health care providers at medical conferences, hospitals, private offices, and include the provision of valuable benefits to health care providers. Also utilized were documents, patient brochures, and websites.

17. In April 2015, MARY CLAIRE PHILLIPS received surgery including mesh implant for an incisional hernia. That mesh began to fail with infections and multiple herniations commencing July 2015.

18. MARY CLAIRE PHILLIPS has been diagnosed with a surgical abdomen to extent that which surgery will result in a therapeutic outcome to be determined via CT scan in March 2017.

19. Defendant, manufactured, sold, and/or distributed the C-QUR Mesh Products to Plaintiff through her doctors, to be used for treatment of hernia repair.

20. The C-QUR Mesh Products were at all times utilized and implanted in a manner foreseeable to

Defendant, as Defendant generated the instructions for use and created procedures for implanting the mesh.

21. Other than any degradation caused by faulty design or faulty packaging, the C-QUR Mesh implanted into the Plaintiff was in the same or substantially similar condition as when it left the possession of Defendant, and in the condition directed by and expected by Defendant.

22. Plaintiff and her physicians foreseeably used and implanted the C-QUR Mesh Products, and did not misuse, or alter the Products in an unforeseeable manner.

23. Defendant advertised, promoted, marketed, sold, and distributed the C-QUR Mesh Products as a safe medical device when Defendant knew or should have known the C-QUR Mesh Products were not safe for their intended purposes and that the mesh products could cause serious medical problems.

24. Defendant provided incomplete, insufficient, and misleading information to physicians in order to increase the number of physicians utilizing the C-QUR Mesh Products, and thus increase the sales of the products, and also leading to the dissemination of inadequate and misleading information to patients, including Plaintiff.

25. Defendant made representations with the intent of inducing the medical community to recommend, prescribe, dispense, and purchase C-QUR for use as a means of treatment for hernia repairs which evinced an indifference to the health, safety, and welfare of Plaintiff.

26. Defendant had sole access to material facts concerning the defective nature of the products and their propensity to cause serious and dangerous side effects.

27. At all relevant times herein, Defendant continued to promote C-QUR Mesh Products as safe and effective even when no valid clinical trials had been done supporting long or short term efficacy.

28. In reliance on Defendant's representations, Plaintiff's doctor was induced to, and did use the C-QUR Mesh Products, thereby resulting in severe and permanent personal injuries and damages.

## FIRST CAUSE OF ACTION: NEGLIGENCE

29. Plaintiff incorporates by reference the forgoing paragraphs as if fully set forth herein.

30. At all relevant times, Defendant had a duty to use reasonable care in designing, manufacturing,

marketing, labeling, packaging, and/or selling the mesh products.

31.     On the occasion in question the Defendant breached its duty by designing, manufacturing, marketing, labeling, packaging, and/or selling the unreasonably dangerous mesh products.

32.     As a direct, proximate and foreseeable result of the mesh products' aforementioned defects, Plaintiff MARY CLAIRE PHILLIPS, was caused and in the future will be caused to suffer severe personal injuries, pain and suffering, severe emotional distress, financial or economic loss, including, but not limited to, obligations for medical services and expenses, and other damages.

33.     Each act or omission of negligence was a proximate cause of the damages and injuries to Plaintiff.

### SECOND CAUSE OF ACTION: STRICT LIABILITY - DESIGN DEFECT

34.     Plaintiff incorporates by reference the factual portion of this complaint as if fully set forth herein and additionally or in the alternative, if same be necessary, allege as follows:

35.     At the time each implanting surgeon implanted the mesh product in Plaintiff MARY CLAIRE PHILLIPS, Defendant was engaged in the business of selling said product.

36.     The mesh product was defectively designed when sold.

37.     The mesh product was unreasonably dangerous, taking into consideration the utility of said product and the risks involved in their use.

38.     The mesh product reached Plaintiff MARY CLAIRE PHILLIPS PHILLIP'S implanting surgeon and her without substantial change in the condition in which it was sold.

39.     The defective and unreasonably dangerous condition of the mesh product was the proximate cause of the damages and injuries to Plaintiff MARY CLAIRE PHILLIPS.

40.     As a direct and proximate result of the mesh product's aforementioned defects, Plaintiff MARY CLAIRE PHILLIPS was caused and in the future will be caused to suffer severe personal injuries, pain and suffering, severe emotional distress, financial or economic loss, including, but not limited to, obligations for medical services and expenses, and other damages.

41.     Defendant is strictly liable to Plaintiff MARY CLAIRE PHILLIPS.

### THIRD CAUSE OF ACTION:

### STRICT LIABILITY - MANUFACTURING DEFECT

42. Plaintiff incorporates by reference the factual portion of this complaint as if fully set forth herein and additionally or in the alternative, if same be necessary, allege as follows:

43. At the time Plaintiff MARY CLAIRE PHILLIPS's doctor implanted the mesh product in her body, Defendant was engaged in the business of selling said product.

44. The mesh product was defectively designed when sold.

45. The mesh product was unreasonably dangerous, taking into consideration the utility of said product and the risks involved in its use.

46. The mesh product reached implanting surgeon and Plaintiff MARY CLAIRE PHILLIPS without substantial change in the condition in which it was sold.

47. The defective and unreasonably dangerous condition of the mesh product was a proximate cause of the damages and injuries to Plaintiff MARY CLAIRE PHILLIPS.

48. As a direct and proximate result of the mesh products' aforementioned defects, Plaintiff MARY CLAIRE PHILLIPS was caused and in the future will be caused to suffer severe personal injuries, pain and suffering, severe emotional distress, financial or economic loss, including, but not limited to, obligations for medical services and expenses, and other damages.

49. Defendant is strictly liable to Plaintiff MARY CLAIRE PHILLIPS.

### FOURTH CAUSE OF ACTION: STRICT LIABILITY - FAILURE TO WARN

50. Plaintiff incorporates by reference the factual portion of this complaint as if fully set forth herein and additionally or in the alternative, if same be necessary, alleges as follows:

51. The mesh product implanted in Plaintiff MARY CLAIRE PHILLIPS was not reasonably safe for intended use and was defective as a matter of law due to its lack of appropriate and necessary warnings.

52. As a direct and proximate result of the mesh product's aforementioned defects, Plaintiff MARY CLAIRE PHILLIPS was caused and in the future will be caused to suffer severe personal injuries, pain and suffering, severe emotional distress, financial or economic loss, including, but not limited to,

obligations for medical services and expenses, and other damages.

53.     Defendant is strictly liable to Plaintiff MARY CLAIRE PHILLIPS.

### FIFTH CAUSE OF ACTION: BREACH OF EXPRESS WARRANTY

54.     Plaintiff incorporates by reference the factual portion of this petition as if fully set forth herein and additionally or in the alternative, if same be necessary, alleges as follows:

55.     Defendant made assurances to the general public, hospitals, and health care professionals that the mesh products were safe and reasonably fit for their intended purpose.

56.     Plaintiff MARY CLAIRE PHILLIPS and/or her healthcare providers chose the mesh product based upon Defendant's warranties and representations regarding the safety and fitness of the mesh product.

57.     Plaintiff MARY CLAIRE PHILLIPS, individually and/or by and through her physicians, reasonably relied upon Defendant's express warranties and guarantees that the mesh product was safe, merchantable, and reasonably fit for its intended purpose.

58.     Defendant breached these express warranties because the mesh product implanted in Plaintiff MARY CLAIRE PHILLIPS was unreasonably dangerous and defective and not as Defendant had represented.

59.     Defendant's breaches of express warranties resulted in the implantation of an unreasonably dangerous and defective product in Plaintiff MARY CLAIRE PHILLIPS PHILLIP's body, placing her health and safety in jeopardy.

60.     As a direct and proximate result of Defendant's breaches of the aforementioned express warranties, Plaintiff MARY CLAIRE PHILLIPS was caused and in the future will be caused to suffer severe personal injuries, pain and suffering, severe emotional distress, financial or economic loss, including, but not limited to, obligations for medical services and expenses, impairment of personal relationships, and other damages.

### SIXTH CAUSE OF ACTION: BREACH OF IMPLIED WARRANTY

61.     Plaintiff incorporates by reference the factual portion of this petition as if fully set forth herein

and additionally or in the alternative, if same be necessary, allege as follows:

62.     Defendant impliedly warranted that the mesh products were merchantable and were fit for the ordinary purpose for which they were intended.

63.     When the mesh product was implanted in Plaintiff MARY CLAIRE PHILLIPS to treat her medical condition(s), the product was being used for the ordinary purpose for which intended.

64.     Plaintiff MARY CLAIRE PHILLIPS, individually and/or by and through her physicians, relied upon Defendant's implied warranty of merchantability in consenting to have the mesh product implanted in her.

65.     Defendant breached this implied warranty of merchantability because the mesh product implanted in Plaintiff MARY CLAIRE PHILLIPS was neither merchantable nor suited for its intended use as warranted.

66.     Defendant's breaches of their implied warranties resulted in the implantation of an unreasonably dangerous and defective product in Plaintiff MARY CLAIRE PHILLIPS PHILLIP'S body, placing her health and safety in jeopardy.

67.     As a direct and proximate result of Defendant's breaches of the aforementioned implied warranties, Plaintiff MARY CLAIRE PHILLIPS was caused and in the future will be caused to suffer severe personal injuries, pain and suffering, severe emotional distress, financial or economic loss, including, but not limited to, obligations for medical services and expenses, impairment of personal relationships, and other damages.

## ENHANCED COMPENSATORY DAMAGES

68.     Plaintiff incorporates by reference the factual portion of this complaint as if fully set forth herein and additionally or in the alternative, if same be necessary, allege as follows:

69.     Defendant's conduct in designing, manufacturing, marketing, labeling , packaging and selling the unreasonably safe and defective mesh products amounted to outrageous, unconscionable willful, wanton, and/or reckless conduct and/or criminal indifference to civil obligations affecting the rights of others, including Plaintiff MARY CLAIRE PHILLIPS.

70. The acts, conduct, and omissions of Defendant, as alleged throughout this complaint were willful and malicious and were done with a conscious disregard for the rights of Plaintiff MARY CLAIRE PHILLIPS and other users of Defendant's product and for the primary purpose of increasing Defendant's profits from the sale, distribution, and use of Defendant's products. Defendant's outrageous and unconscionable conduct warrants an award of enhanced compensatory damages against each Defendant in an amount appropriate to provide full and complete compensation.

71. Plaintiff MARY CLAIRE PHILLIPS is entitled to an award of enhanced compensatory damages.

## VICARIOUS LIABILITY

72. Whenever in this complaint it is alleged that Defendant did or omitted to do any act, it is meant that Defendant's officers, agents, servants, employees, or representatives did or omitted to do such act and that at the time such act or omission was done, it was done with the full authorization or ratification of Defendant or was done in the normal and routine course and scope of employment of Defendants' officers, agents, servants, employees, and representatives.

## LOSS OF CONSORTIUM

73. Plaintiff, JAMES PHILLIPS, incorporates by reference the factual portion of this complaint as if fully set forth herein and additionally or in the alternative, if same be necessary, allege as follows:

74. The Plaintiff, JAMES PHILLIPS, states on account of said injuries sustained to his wife as heretofore described, he was deprived of the companionship, consortium and services of said wife and was further compelled to spend certain sums of money for medical expenses on her behalf.

WHEREFORE, the Plaintiff JAMES PHILLIPS demands judgment against the Defendant in an amount that is just and appropriate for the losses sustained together with interest and costs.

**WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:**

1. For past and future general damages in an amount in excess of the minimum jurisdictional limits of this Court;

2. For general damages for personal injury, including permanent impairment,

physical injury, physical and mental pain and suffering, distress, and loss of enjoyment of life;

3. For past and future medical and incidental expenses, according to proof;

4. For past and future loss of earnings and/or earning capacity, according to proof;

5. For prejudgment interest on all damages as is allowed by law;

6. For past and future costs of suit incurred herein;

7. For enhanced compensatory damages in an amount to be determined at trial;

8. For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

This 22th day of February, 2017

        Respectfully submitted,
        PLAINTIFFS CLAIRE PHILLIPS and
        JAMES PHILLIPS
        By their attorneys

        Mark A. Tate
        Georgia State Bar No.: 698820
        James E. Shipley, Jr.
        Georgia State Bar No.: 116508
        TATE LAW GROUP
        2 East Bryan Street
        Suite 600
        Savannah, GA 31401
        (912) 234-3030
        marktate@tatelawgroup.com
        jshipley@tatelawgroup.com
        tlgservice@tatelawgroup.com

        Robert J. Bonsignore, Esq.
        State Bar No.: 547880
        Bonsignore Trial Lawyers, PLLC
        193 Plummer Hill Road
        Belmont, NH 03220
        Cell: (781) 350-0000
        rbonsignore@class-actions.us
        www.classactions.us