## UNITED STATES JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

_____
                                        )
**IN RE:**                              )     **MDL NO. 2753**
                                        )
**ATRIUM MEDICAL CORP. C-QUR MESH**     )     **MDL Docket No.**
**PRODUCTS LIABILITY LITIGATION**       )     **1:16-md-02753-LM**
                                        )     **ALL CASES**
_____)

### DEFENDANT GETINGE AB'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Defendant, Getinge AB ("Getinge"), pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, moves to dismiss this action filed by Plaintiffs in these centralized cases in the multi-district litigation ("MDL") pending before this Court, *In re Atrium Medical Corp. C-Qur Mesh Prods. Liab. Litig.*, MDL No. 2753.[1]  Plaintiffs filed suit against Getinge, a Swedish corporation with its principal place of business in Sweden, alleging seventeen (17) different causes of action contained in the Master Long Form Complaint[2] (the "Master Complaint") [ECF No. 53].  Because this Court has neither general nor specific personal jurisdiction over Getinge, Getinge must be dismissed, with prejudice, from these MDL proceedings.

---

[1] Getinge AB is also moving, in the alternative, to dismiss the fraud-based causes of action for failure to state a claim under Rules 9(b) and 12(b)(6), Fed. R. Civ. P.  Getinge AB expressly adopts and incorporates the arguments found in Defendants' Memorandum in Support of Their Motion to Dismiss Fraud-Based Counts Contained in the Long Form Complaint filed contemporaneously herewith, as if fully stated herein.

[2] The long form complaint asserts 17 causes of action against Defendants: negligence (Count I); strict liability-design defect (Count II); strict liability – manufacturing defect (Count III); strict liability – failure to warn (Count IV); strict liability – defective product (Count V); breach of express warranty (Count VI); breach of implied warranties of merchantability and fitness of purpose (Count VII); fraudulent concealment (Count VIII); constructive fraud (Count IX); discovery rule, tolling, and fraudulent concealment (Count X); negligent misrepresentation (Count XI); intentional infliction of emotional distress (Count XII); violation of consumer protection laws (Count XIII); gross negligence (Count XIV); unjust enrichment (Count XV); loss of consortium (Count XVI); and punitive or enhanced compensatory damages (Count XVII).

## I.   **INTRODUCTION**

This is a products liability MDL involving a Class II prescription, implantable medical device.   Plaintiffs invite this Court to entertain claims against a foreign parent company possessing no meaningful contacts with this forum.   This Court should decline that invitation and dismiss all claims against Defendant Getinge for lack of personal jurisdiction.

Getinge, a Swedish corporation with its principal place of business in Sweden, has no direct connections or presence in the United States.   It is not registered to do business in any forum in the United States, nor does it maintain any registered agents in the United States.   It does not own, operate, or maintain any facilities, offices, or places of business in the United States.   In short, Getinge is not "at home" in this forum or any forum in the United States and cannot be subjected to general personal jurisdiction in this MDL.

Likewise there is no basis for this Court to assert specific personal jurisdiction over Getinge.   Getinge does not manufacture any products, much less the products at issue in this litigation.   Getinge derives no direct revenue from activities in any U.S. state, and pays no federal or state income taxes in the United States.   Plaintiffs therefore cannot show that their claims arise from or relate to any contacts by Getinge with this or any other forum in the United States.   Nor can Plaintiffs show that Getinge has purposefully availed itself of the benefits of this forum.

Plaintiffs also cannot escape Getinge's dismissal by attributing the jurisdictional acts of co-defendant Atrium Medical Corporation ("Atrium") or Maquet Cardiovascular US Sales, LLC ("MCV US Sales") to Getinge.   The conclusory facts alleged in the Master Complaint provide no basis for this Court to disregard the separate corporate existence of Getinge, Atrium, and MCV US Sales.   Thus, this Court should dismiss Getinge from these actions with prejudice.

## II.   <u>STATEMENT OF FACTS</u>

These cases involve plaintiffs who have been implanted with coated mesh sold under the brand name C-Qur Mesh ("C-Qur Mesh").  Plaintiffs allege, *inter alia*, that the C-Qur Mesh products they were implanted with for the treatment of hernias were defective and caused them to suffer various injuries.  The C-Qur Mesh products are manufactured by Defendant Atrium, a corporation existing under the laws of Delaware with its principal place of business in New Hampshire.  (Compl., ¶ 1).[3]

Getinge is the head of a multinational conglomerate of companies with a primary focus of providing products and solutions to healthcare and life sciences.  (*See* Declaration of Getinge's Chief Financial Officer, Reinhard Mayer ["Mayer Decl."], ¶ 4, attached hereto as **Exhibit A**).[4]  Getinge is a Swedish company with its principal place of business in Sweden.  (*Id.*; *see also* Compl., ¶ 3).  Getinge does not design, manufacture, market, sell, or distribute any products, including the products at issue in this litigation.  (Mayer Decl., ¶ 11).

Similarly, Getinge is not registered to do business in any of the states or territories of the United States.  (*Id.* at ¶ 29).  Getinge does not maintain any registered agents for service of process in the U.S.  (*Id.*).  Getinge does not own, operate, or maintain any facilities, offices, or places of business in the U.S.  (*Id.*).  Moreover, Getinge does not pay any federal or state income taxes in the U.S.  (*Id.* at ¶ 24).

In November 2011, Getinge acquired Atrium through a reverse triangle merger, with Atrium surviving as an indirect subsidiary of Getinge.  (*Id.* at ¶ 8).  Both before and after the

---

[3] Citations to Plaintiffs' Master Complaint, [ECF No. 53], will be designated as "Compl." followed by the relevant paragraph.

[4] In a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, defendants may proffer evidence that goes outside the four corners of the complaint, such as affidavits and declarations. *See Reynolds v. InVivo Therapeutics Holdings Corp.*, No. 16-cv-384-JL, 2016 WL 6997489, at *2 (D.N.H. Nov. 30, 2016).

merger, Atrium has been the company responsible for the research, development, testing, manufacture, production, packaging, and labeling of the C-Qur Mesh products.   (*Id.* at ¶ 9). Prior to 2013, Atrium was also the company responsible for the marketing, promotion, distribution, and sale of the C-Qur Mesh.   (*Id.*).   Beginning in January 2013, pursuant to a Distribution Agreement entered into between Atrium and MCV US Sales, MCV US Sales has had the exclusive right to promote, market, sell and distribute the C-Qur Mesh products throughout the U.S.   (*Id.* at ¶ 10).   However, Getinge has never manufactured, marketed, or sold any C-Qur Mesh products.   (*Id.* at ¶ 11).

## III.   ARGUMENT

### A.   Legal Standard

In an MDL action such as this one, the Court may exercise personal jurisdiction over Getinge only to the extent permitted to the original transferor court.   *See In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. 2:11-CV-10414 MRP, 2012 WL 1322884, at *2 (N.D. Cal. Nov. 7, 2015); *In re Asbestos Prods. Liab. Litig. (No. VI)*, No. 02-md-875, 2014 WL 5394310, at *1 (E.D. Pa. Oct. 23, 2014) ("In the MDL setting, the transferee court applies the personal jurisdiction law of the state where the case was filed.").   Here, to date, cases have been filed in sixteen (16) separate states.[5]   Typically, the proper inquiry would be "whether the exercise of jurisdiction is sanctioned by the long-arm statute of the forum state and comports with due process requirements of the Constitution." *Bulwer v. Massachusetts Coll. of Pharmacy & Health Scis.*, 2014 WL 3818689, at *2 (D.N.H. Aug. 4, 2014); *see also Reynolds v. InVivo Therapeutics Holdings Corp.*, 2016 WL 6997489, at *1 (D.N.H. Nov. 30, 2016).   However,

---

[5] At the time of filing, the transferor courts include federal courts sitting in New Hampshire (14 cases), Florida (3), Georgia (2), Kentucky (2), Pennsylvania (2), Arkansas (1), Arizona (1), Kansas (1), Indiana (1), Louisiana (1), Mississippi (1), Missouri (1), Ohio (1), North Carolina (1), Tennessee (1), and Texas (1).

when the exercise of personal jurisdiction violates due process, it is dispositive and therefore addressing jurisdiction under the state's long-arm statute is unnecessary.  *See Hood v. Ascent Med. Corp.*, --- Fed. App'x ----, 2017 WL 2274276, at *2 (2d Cir. May 24, 2017); *see also Sonera Holding B.V. v. Cukorova Holding A.S.*, 750 F.3d 221, 224-25 & n.2 (2d Cir. 2014) (declining to address "scope of general jurisdiction under New York law" where exercising general jurisdiction "clearly inconsistent with *Daimler*").

With respect to the federal due process analysis, a transferee court in an MDL should apply the federal law of its own circuit.  *See In re Chinese Manufactured Drywall Prod. Liab. Litig.*, 894 F. Supp. 2d 819, 836-37 (E.D. La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014) (in analyzing a jurisdictional challenge, concluding that "the MDL transferee court . . . is obliged to apply . . . the substantive state law of the transferor court . . . and the federal law of its own circuit" and finding that "[t]his conclusion is overwhelmingly supported by both the jurisprudence and legal scholarship") (collecting cases).

Plaintiffs bear the burden of establishing personal jurisdiction is proper.  *A Corp. v. All American Plumbing, Inc.*, 812 F.3d 54, 58 (1st Cir. 2016).  To do this, Plaintiffs may not rest on mere allegations in the Master Complaint, rather, they must submit competent "evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction." *Id.* (quoting *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 134 (1st Cir. 2006)).  "The court views this evidence, together with any evidence proffered by the defendants, in the light most favorable to the plaintiff and draws all reasonable inferences therefrom in the plaintiff's favor, albeit without crediting bald allegations or unsupported conclusions."  *Reynolds*, 2016 WL 6997489, at *2 (quoting *Carreras v. PMG Collins, LLC*, 660 F.3d 549, 552 (1st Cir. 2011)) (internal quotations and alterations omitted).

**B.     This Court Lacks Jurisdiction Over Getinge**

There are two potential avenues by which this Court might exercise personal jurisdiction: general and specific.  However, neither provides this Court with jurisdiction over Getinge.

It is well settled that "[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011).  Specific jurisdiction, on the other hand, "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction."  *Id.* (internal quotations omitted); *Cossaboon v. Me. Med. Ctr.*, 600 F.3d 25, 31 (1st Cir. 2010) (Specific jurisdiction "may only be relied upon where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts.").

Here, Plaintiffs have not – and indeed cannot – demonstrate the existence of general personal jurisdiction because Getinge is not "at home" in any state or territory of the United States.  Nor can Plaintiffs demonstrate the existence of specific personal jurisdiction because Getinge does not manufacture, sell or distribute any products, anywhere.  Therefore, Plaintiffs' C-Qur Mesh claims do not arise directly out of, or relate to, Getinge's contacts with any U.S. state.

### 1.     *This Court Lacks General Personal Jurisdiction Over Getinge*

Plaintiffs attempt to establish this Court's jurisdiction over Getinge by alleging that it conducts business in New Hampshire because it was "engaged in testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling" and "receiv[ing] substantial compensation and profits from sales of Hernia Mesh" and "made material omissions

6

and misrepresentations."   (Compl., ¶¶ 24, 25).   These allegations are insufficient to confer jurisdiction over Getinge.

General jurisdiction may only be asserted over corporate entities if "their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."  *Daimler AG v. Bauman*, 134 S. Ct. 746, 754, 758 n.11 (2014).   "With respect to a corporation, the *place of incorporation* and *principal place of business* are paradigm bases for jurisdiction."  *Id.* at 760 (internal quotations and alterations omitted; emphasis added).   Only in exceptional cases – not present here[6] – will a corporation be subject to general, all-purpose jurisdiction in a forum other than its principal place of business or place of incorporation.  *See id.* at 761 n.19.

In *Goodyear*, the Supreme Court held that having a small percentage of a foreign manufacturer's products distributed in a particular state by a related corporate entity is insufficient to establish general jurisdiction.  *Goodyear*, 131 S. Ct. at 2855-56.  More recently, in *Daimler AG v. Bauman*, the Supreme Court considered whether a court in California could exercise general jurisdiction over a German manufacturer based upon the conduct of business in the forum by the foreign manufacturer's subsidiary.  *Daimler*, 134 S. Ct. at 761-62.  That subsidiary had multiple California-based facilities, a regional office, *billions* of dollars in annual sales to California and was the largest supplier of luxury vehicles to the California market.  *Id.* at 752.  Nevertheless, recognizing the dangers of subjecting foreign manufacturers to lawsuits

---

[6] The Court in *Daimler AG* points to *Perkins v. Benguet Consol. Mining Co.*, 72 S. Ct. 413 (1952), as "the textbook case of general jurisdiction appropriately exercised over a foreign corporation that has not consented to suit in the forum."  *Daimler AG*, 134 S. Ct. at 755-56 (quoting *Goodyear*, 131 S. Ct. at 2856).  However, the allegations and evidence proffered in this case come nowhere close to the facts sufficient to find an "exceptional case" in *Perkins*.  *See id.* at 756 (the foreign corporation's president had ceased all foreign operations and moved to Ohio where he oversaw all of the company's activities, thereby making Ohio the corporation's principal, if temporary, place of business) (citations omitted).

based on the activities of their U.S. subsidiaries, the Court found that general jurisdiction was lacking because neither entity was incorporated in California or had their principal place of business there.  *Id.* at 761-62.

Plaintiffs correctly allege that Getinge is a Swedish company with its principal place of business located in Sweden.  (Compl. ¶ 3).  Moreover, Getinge does not have *any* operations in any U.S. state, let alone operations that are "so substantial and of such a nature as to render [Getinge] at home" in any forum in the United States.  Indeed, as the Mayer Declaration makes clear:

- Getinge does not design, manufacture market, see or distribute any products (*See* Mayer Decl., ¶ 11);

- Getinge did not and does not research, develop, design, formulate, test, manufacture, inspect, package, label, supply, advertise, promote, market, distribute, and/or sell C-QUR Mesh products (*See* Mayer Decl., ¶ 11);

- Atrium is responsible for the research, development, testing, manufacture, production, packaging, and labeling of C-QUR Mesh (*See* Mayer Decl., ¶ 9);

- Atrium is the sole entity cleared by the Food and Drug Administration to manufacture the C-QUR Mesh products (*See* Mayer Decl., ¶ 13);

- Payments flowing from Atrium or MCV US Sales to Getinge reflecting Atrium or MCV US Sales profits are dividends as a result of the ownership of these shares (*See* Mayer Decl., ¶ 16);

- Getinge is not registered to do business in any of the fifty (50) states or U.S. Territories (*See* Mayer Decl., ¶ 29);

- Getinge has not appointed any agents for service or process in any of the fifty (50) states or U.S. Territories (*See* Mayer Decl., ¶ 29);

- Getinge does not own, operate, or maintain any facilities, offices, or places of business in the fifty (50) states or U.S. Territories (*See* Mayer Decl., ¶ 29).

Thus, as was true with respect to the foreign companies in *Goodyear* and *Daimler AG*, this Court lacks general personal jurisdiction over Getinge.

## 2. *This Court Lacks Specific Personal Jurisdiction Over Getinge*

Plaintiffs also cannot establish specific jurisdiction over Getinge because Getinge did not, and does not, manufacture, market, distribute, or sell the C-Qur Mesh products that allegedly caused the Plaintiffs' injuries.  (Mayer Decl., ¶ 11).  Simply put, Getinge does not engage – in the U.S. or anywhere – in any of the alleged activities giving rise to the litigation.  Accordingly, this Court does not have specific jurisdiction over Getinge.

Three factors apply when determining whether specific jurisdiction exists: "relatedness, purposeful availment, and reasonableness."  *Bulwer, supra*, 2014 WL 3818689 at *3 (quoting *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 27 (1st Cir. 2008)).[7]  This inquiry involves a tripartite analysis:

> First, an inquiring court must ask whether the claim that undergirds the litigation directly relates to or arises out of the defendant's contacts with the forum. Second, the court must ask whether those contacts constitute purposeful availment of the benefits and protections afforded by the forum's laws. Third, if the proponent's case clears the first two hurdles, the court then must analyze the overall reasonableness of an exercise of jurisdiction in light of a variety of pertinent factors that touch upon the fundamental fairness of an exercise of jurisdiction.

*Phillips Exeter Academy v. Howard Phillips Fund*, 196 F.3d 284, 288 (1st Cir. 1999).

In order for a court to exercise specific jurisdiction, "[a]n affirmative finding on each of the three elements of the test is required."  *Id.*   Here, Plaintiffs cannot establish any of these requirements.

The first requirement, relatedness, focuses on whether the *defendant's contacts* with *the forum state* "form an important, or at least material, element of proof in the plaintiff's case."  *Id.* (quoting *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 137 (1st Cir. 2006)); *see also Sawtelle v. Farrell*, 70 F.3d 1381, 1389 (1st Cir. 1995) ("The relatedness requirement is not met

---

[7] Purposeful availment is sometimes called "minimum contacts." *See Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 144 (1st Cir. 1995).

merely because a plaintiff's cause of action arose out of the general relationship between the parties; rather, the action must directly arise out of the specific contacts between the defendant and the forum state.") (collecting cases).  As such, it is the defendant, "and not the plaintiff or any third parties, who must create the contacts with the forum state." *Reynolds*, *supra*, 2016 WL 6997489 at *3 (citing *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) (minimum contacts analysis "looks to defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there")).  The relevant inquiry in the First Circuit, is whether the injury would not have occurred but for the defendant's forum activity (cause in fact) and whether the defendant's in-state conduct gave birth to the cause of action (proximate cause).  *Bulwer, supra*, 2014 WL 3818689 at *3 (internal quotations, citations, and alterations omitted).

Here, Getinge does not manufacture, market, distribute, or sell the C-Qur Mesh products at issue in this litigation.  Getinge does not conduct these activities in any state in the U.S. or anywhere else, nor does it make any representations or statements about the products in any advertisements, promotions, or marketing materials in any forum in the United States.  (*See* Mayer Decl., ¶ 11).  As such, Plaintiffs' claims are completely unrelated to any of Getinge's contact with any state in the United States and the relatedness prong is unsatisfied.

The second requirement, whether Getinge's contacts constitute purposeful availment of the benefits and protections afforded by the forum's laws, fails for the same reasons above.  For purposes of demonstrating purposeful availment, "'[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.'"  *A Corp. v. All American Plumbing, Inc.*, 812 F.3d 54, 60 (1st Cir. 2016) (quoting *Walden v. Fiore*, 134 S. Ct. 1115, 1125 (2014)).

The First Circuit has "observed that the cornerstones upon which the concept of purposeful availment rest are voluntariness and foreseeability." *Sawtelle*, 70 F.3d at 1391. Foreseeability has been described as whether the defendant's conduct and connection with the forum state is "such that he should reasonably anticipate being haled into court there." *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 207-08 (1st Cir. 1994) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 100 S. Ct. 559, 567 (1980)).   Voluntariness makes sure that jurisdiction does not rest on the "unilateral activity of another person." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 105 S. Ct. 2174, 2183 (1985)).   In *A Corp*., the court held that plaintiff failed to establish purposeful availment when the defendant did not offer or sell any goods into the forum state, and the only contact with the forum state was the use of a website that was accessible from everywhere in the world, including the forum state.  *A Corp.*, 812 F.3d at 60. However, that website did not offer any mechanism for residents of the forum state to order any goods or services.  *Id.*

Here, Getinge has not purposely availed itself of the laws of any U.S. state.  Getinge does not manufacture, market, distribute, or sell any products in the United States, much less the products at issue in this case.  (*See* Mayer Decl., ¶ 11).  Getinge does not pay any state or federal income taxes in the U.S.  (Mayer Decl., ¶ 24).  Getinge is not registered to do business in any state, does not maintain any registered agents for service of process in the U.S., and does not own, operate or maintain any facilities, offices, or places of business in the U.S.  (*Id.* at ¶ 29). Moreover, like the defendant in *A Corp.,* although Getinge has a website that is accessible everywhere in the world, there are no allegations that Plaintiffs have the ability or did purchase products from the website.  (*Cf.* Compl., ¶ 13).  Nor can they make such allegations as the C-Qur

11

Mesh products are available only through a medical provider.  Accordingly, Getinge's lacks the requisite minimum contacts with any U.S. state to subject it to personal jurisdiction.

Finally, with respect to the third requirement – whether the assertion of personal jurisdiction over Getinge would be reasonable – the First Circuit has explained that "the reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Ticketmaster*, 26 F.3d at 210.  Indeed, the factors to assess reasonableness[8] are only intended to play a role in *close* cases.  *See A Corp.*, 812 F.3d at 61-62 ("[T]hese factors are only intended to aid the court in achieving substantial justice, and play a larger role in close cases." (citations and quotations omitted)).  Here, Plaintiffs have not satisfied the first two prongs of relatedness and purposeful availment, and thus in no way can this be deemed a "close case."  *Id.*  (noting it is unnecessary to address the third prong when plaintiff fails to satisfy the first two prongs).

In sum, Plaintiffs have not, and cannot, establish that the assertion of specific personal jurisdiction is constitutionally permitted over Getinge for the claims contained in the Master Complaint.  Therefore, Getinge must be dismissed with prejudice from this MDL.[9]

---

[8] These factors, known as the "gestalt" factors are: "(1) the defendant's burden of appearing in the forum state, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies."  *A Corp.*, *supra*, 812 F.3d at 61 (quotations, citations, and alterations omitted).  These factors additionally weigh against exercising jurisdiction over Getinge, however it is unnecessary to analyze these factors when Plaintiffs fail to satisfy the first two prongs of the due process inquiry.  *Id.* at 61-62.

[9] Getinge recognizes that additional tag-along cases are likely to be filed and transferred into this MDL, and that some of these tag-along actions may be transferred from states that are not currently represented thus far.  However, dismissal for lack of personal jurisdiction remains proper because: (1) no current transferor court would have personal jurisdiction over Getinge; and (2) Getinge has established that each and every forum in the United States lacks specific

### C.    Plaintiffs Cannot Attribute the Acts of Atrium or MCV US Sales to Getinge to Confer Personal Jurisdiction

Plaintiffs next seemingly attempt to blur the lines of corporate identity in order to obtain personal jurisdiction over Getinge by alleging that Atrium is an alter ego or instrumentality of Getinge and MCV US Sales.  (Compl., ¶ 12).[10]  In support of these allegations, Plaintiffs state that:

- Atrium's assets and capital are subject to ownership and control of Getinge, (Compl., ¶ 14);

- Atrium is undercapitalized, (*Id.*);

- MCV US Sales, Getinge and Atrium combine their property and labor, (*Id.*); and

- Getinge, through Atrium, has, at all pertinent times, been responsible for the research, development, testing, manufacture, production, packaging, labeling, marketing, promotion, distribution and/or sale of C-QUR Mesh, (*Id.* at ¶ 15).

*See also* (Compl., ¶¶ 10-15).

Getinge is a large, multinational corporation and as explained below, Getinge, Atrium, and MCV US Sales all maintain their separate corporate formalities.  Moreover, Getinge does not assert sufficient control and domination over either Atrium or MCV US Sales as to make either the alter ego of Getinge.  Consequently, it would violate Getinge's due process for this Court to assert personal jurisdiction over Getinge based upon the contacts of its indirect subsidiary companies.

---

personal jurisdiction because the claims at issue here do not arise from Getinge's contacts or actions with any forum state, and Getinge has not purposefully availed itself of the privilege of conducting business in any U.S. forum state.  (*See* Mayer Decl., ¶¶ 11, 19, 24, 27-29). Therefore, any hypothetical concerns about future cases from future forums are unwarranted.

[10] It is unclear whether Plaintiffs are seeking to confer general or specific jurisdiction upon Getinge through their alter ego theories.

##### 1.     *Facts Concerning the Corporate Relationship Between the Defendants*

Plaintiffs' Master Complaint contains only conclusory allegations of alter ego unsupported by specific factual allegations of interdependence and control.  As mentioned above, Getinge is a Swedish corporation with its principal place of business in Sweden.  (Mayer Decl., ¶ 4).  Getinge is a publicly traded company with its shares listed on Nasdaq Stockholm AB.  (*Id.*).  Getinge does not design, manufacture, market, sell, or distribute any products, including the products at issue in this litigation.  (*Id.* at ¶ 11).  Getinge is not registered to do business in any of the states or territories of the United States, nor does it maintain any registered agents for service of process in the U.S.  (*Id.* at ¶ 29).  Getinge does not own, operate, or maintain any facilities, offices, or places of business in the U.S.  (*Id.*).  Moreover, Getinge does not pay any federal or state income taxes in the U.S.  (*Id.* at ¶ 24).

Atrium is a Delaware corporation with its principal place of business in New Hampshire and is a wholly owned subsidiary of Datascope Corp., a non-public corporation organized under the laws of Delaware.  (*Id.* at ¶ 5).  Datascope Corp. is a wholly owned subsidiary of Getinge Holding USA II, Inc., a non-public Delaware corporation, which in turn is a wholly owned subsidiary of Getinge Holding USA, Inc., a non-public corporation organized under the laws of Delaware.  (*Id.*).  Getinge owns 100% of the shares of Getinge Holding USA, Inc., making Atrium a fourth-tier subsidiary of Getinge.  (*Id.*).  Getinge owns 100% of Atrium's shares through these subsidiaries.  (*Id.*).

MCV US Sales is a Delaware limited liability company with its principal place of business in Wayne, New Jersey.  (*Id.* at ¶ 6).  MCV US Sales' sole member is Maquet Cardiovascular, LLC, a Delaware limited liability company also with its principal place of business in Wayne, New Jersey.  (*Id.*).  Maquet Cardiovascular, LLC's sole member is Datascope

Corp., which is a wholly owned subsidiary of Getinge Holding USA II, Inc., which is a wholly owned subsidiary of Getinge Holding USA, Inc. (*Id.*). Therefore, MCV US Sales is a fifth-tier subsidiary of Getinge, and Getinge owns 100% of MCV US Sales' shares through its ownership of these various entities. (*Id.*). While Atrium and MCV US Sales are affiliated companies, neither has any ownership or other interest in the other company. (*Id.* at ¶¶ 7-8).

Getinge acquired Atrium in November 2011 through the use of a reverse triangular merger, with Atrium surviving as an indirect subsidiary of Getinge. (*Id.* at ¶ 8). At all times before, during, and after the merger, Atrium maintained its own separate corporate identity. (*Id.*). Upon completion of the merger, Atrium's assets and liabilities remained on Atrium's balance sheet and financial records, and Getinge does not directly own any of Atrium's assets or liabilities. (*Id.*).

With respect to the C-Qur Mesh products, Atrium is the only company responsible for the research, development, testing, manufacture, production, packaging, and labeling of the C-Qur Mesh. (*Id.* at ¶ 9). Moreover, it is the only entity that is cleared by the Food and Drug Administration ("FDA") to manufacture the C-Qur Mesh products. (*Id.* at ¶ 13). Getinge does not manufacture the C-Qur Mesh products, and it would be in violation of FDA rules and regulations if it did so without obtaining the proper permissions and authorizations. (*See id.*).

Atrium, MCV US Sales, and Getinge all manage and operate their own day-to-day business activities independent of each other. (*Id.* at ¶ 14). Atrium and MCV US Sales have their own board of directors and officers, who are primarily responsible for their respective businesses. (*Id.*). Getinge, Atrium, and MCV US Sales maintain separate and independent by-laws, minutes, corporate records, financial records, and bank accounts. (*Id.* at ¶ 21).

Atrium employs approximately 500 employees, and pays its employees from bank accounts in Atrium's name, with each payroll check issued by "Atrium Medical Corporation." (*Id.* at ¶ 15).  This includes all employees involved in the manufacture of C-Qur Mesh.  (*Id.*).  Getinge does not pay the salaries of any Atrium or MCV US Sales employee. (*Id.* at ¶ 19).  Atrium is also responsible for and has complete authority over its day-to-day hiring and firing decisions of its employees, (*Id.* at ¶ 17), as is MCV US Sales with respect to its employees.  (*Id.* at ¶ 18).

Like Atrium, MCV US Sales has its own employees and each employee is paid from a bank account in MCV US Sales' name.  (*Id.* at ¶ 16).  Each payroll check is issued by "Maquet Cardiovascular US Sales, LLC" and, since 2013, this includes every employee who promotes, markets, or sells C-Qur Mesh.  (*Id.*).

Getinge, Atrium, and MCV US Sales are also financially independent of one another and maintain separate bank accounts.  (*Id.* at ¶ 21).  Atrium and MCV US Sales are fully capitalized and Getinge does not pay for their day-to-day research, salaries, raw materials, or other day-to-day operating expenses.  (*Id.*).  Getinge, Atrium, and MCV US Sales prepare their own financial statements and budgets according to the International Financial Reporting Standards (IFRS).  (*Id.* at ¶¶ 21, 25).  Atrium and MCV US Sales are responsible for their own profits and losses.  (*Id.* at ¶ 21).  Additionally, Getinge, Atrium, and MCV US Sales do not treat the assets of one entity as the assets of another.  (*Id.* at ¶ 26).  Getinge has not improperly divested the assets from Atrium or MCV US Sales for its own benefit.  (*Id.*).  Rather, any indirect payments Getinge receives from Atrium or MCV US Sales are payments reflecting profits from Getinge's subsidiaries and are paid out as dividends as a result of Getinge's indirect ownership of the shares of each

subsidiary.  (*Id.*).  Getinge does not jointly own, maintain, or operate any facilities with Atrium or MCV US Sales, including the facility where C-Qur Mesh is manufactured.  (*Id.* at ¶ 27).

In sum, Getinge's relationships with Atrium and MCV US Sales are typical parent-subsidiary relationships, devoid of co-mingling of assets and of the exercise of complete control or domination by Getinge over Atrium or MCV US Sales.  At all pertinent times, Getinge, Atrium, and MCV US Sales have maintained all corporate formalities and each entity's separate corporate identity.  (*See id.* at ¶¶ 8, 14, 28).  With these facts in mind, the law as applied demonstrates that Plaintiffs cannot impute Atrium or MCV US Sales' actions or contacts to Getinge for personal jurisdiction purposes or otherwise.

### 2.    Plaintiffs Cannot Pierce the Corporate Veil in Order for This Court to Obtain Personal Jurisdiction Over Getinge

It is well-settled that "[t]he existence of a parent-subsidiary relationship is insufficient, on its own, to justify imputing one entity's contacts with a forum state to another for the purpose of establishing personal jurisdiction."  *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015). Rather, in order to impute the contacts of a subsidiary company to its nonresident parent company to obtain personal jurisdiction over the parent company, Plaintiffs "must be able to show that [they] could pierce the subsidiary's corporate veil by establishing that the subsidiary is the 'alter ego' of the nonresident parent company."  *Goodbye Vanilla, LLC v. Aimia Proprietary Loyalty U.S. Inc.*, 196 F. Supp. 3d 985, 989 (D. Minn. 2016).[11]

---

[11] *See also Epps v. Stewart Information Services Corp.*, 327 F.3d 642, 648-49 (8th Cir. 2003) ("[P]ersonal jurisdiction can be based on the activities of the nonresident corporation's in-state subsidiary, but only if the parent so controlled and dominated the affairs of the subsidiary that the latter's corporate existence was disregarded so as to cause the residential corporation to act as the nonresidential corporate defendant's alter ego."); *Ranza*, 793 F.3d at 1071 ("The alter ego test is designed to determine whether the parent and subsidiary are 'not really separate entities,' such that one entity's contacts with the forum state can be fairly attributed to the other."); *Firefighters' Ret. Sys. v. Citco Grp. Ltd.*, No. 13-cv-373-SDD, 2016 WL 3460396, at *4 (M.D. La. June 21,

Many jurisdictions require a plaintiff to show that the corporate form was a sham or that it was used to perpetrate a fraud on the plaintiff before the Court will disregard the corporate separateness of a parent and subsidiary for personal jurisdiction purposes. *See, e.g., Brazil*, 2016 WL 4844442, at *5; *Adtile Tech., Inc.*, 192 F. Supp. 3d at 522; *Seedman v. Cochlear Americas*, No. 8:15-cv-366, 2015 WL 4768239, at *4 (C.D. Cal. Aug. 10, 2015); *In re Automotive Parts Antitrust Litig.*, No. 12-md-02311, 2015 WL 4508938, at *3 (E.D. Mich. July 24, 2015). However, even under a more relaxed standard – which requires that the parent corporation exert such a degree of control and domination over the subsidiary corporation that it should be treated as a mere alter ego[12] – Plaintiffs cannot show that the independence of the separate corporate entities should be disregarded such that Atrium's and/or MCV US Sales' contacts should be imputed to Getinge.

Plainly, mere ownership of a subsidiary company is insufficient to pierce the corporate veil, even if there is some overlap between the officers and directors of the parent and subsidiary companies. *See, e.g., De Castro v. Sanifill, Inc.*, 198 F.3d 282, 283-84 (1st Cir. 1999); *Ranza*, 793 F.3d at 1075; *Cons. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1293 (11th Cir. 2000) ("It is well established that as long as a parent and a subsidiary are separate and distinct corporate

---

2016) ("The Plaintiff must come forward with evidence of control by Citgo Group over the internal business operations and affairs of CTM such that CTM can be regarded as Citgo Group's agent or alter ego, and hence fuse the two together for jurisdictional purposes.") (internal citations and quotations omitted); *Brazil v. Janssen Research & Development LLC*, --- F. Supp. 3d ----, 2016 WL 4844442, at *5 (N.D. Ga. Mar. 24, 2016); *Adtile Tech. Inc. v. Perion Network Ltd.*, 192 F. Supp. 3d 515, 521-23 (D. Del. 2016) (overlap of one director and general allegations of a lack of corporate separateness insufficient).

[12] For example, the Third Circuit has a test composed of two parts: the alter ego test and the agency test. While the alter ego test requires that fraud or inequity be shown, the agency test merely considers the degree of control which the parent exercises over the subsidiary. *See Adtile Tech. Inc.*, 192 F. Supp. 3d at 522 (describing the differences between the two tests).

entities, the presence of one in a forum state may not be attributed to the other." (citing *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 45 S. Ct. 250, 251 (1925))).

The First Circuit has described the analysis courts undertake when determining whether to pierce the corporate veil for jurisdictional purposes:

> In determining whether to disregard the corporate form, courts normally conduct a highly fact-specific inquiry, including, inter alia, consideration of the extent to which a subsidiary may have disregarded corporate formalities; the degree of control exercised by the parent over the day-to-day operations of the subsidiary; overlap in ownership, officers, directors, and personnel; and whether the subsidiary was adequately capitalized.

*De Castro*, 198 F.3d at 284 (collecting cases and authorities).

Moreover, Plaintiffs have to establish that piercing the corporate veil is warranted between each of the separate pairs of entities: Atrium and Getinge; MCV US Sales and Getinge; and Atrium and MCV US Sales (not to mention the multiple intermediate subsidiaries in the corporate chain). *See He Nam You v. Japan*, No. 15-cv-03257, 2016 WL 3405444, at *3 (N.D. Cal. June 21, 2016) ("To succeed [in imputing personal jurisdiction from one affiliate entity to another], plaintiffs would have to show that *all three* of FCI, Fuji Media, and Sankei, are alter egos of each other.") (emphasis in original); *see also Michnovez v. Blair, LLC*, 795 F. Supp. 2d 177, 186-88 (D.N.H. 2011) (McCafferty, J.) ("To the extent plaintiffs attempt to create one unitary BV entity out of a parent company and two of its subsidiaries, in which each component entity is responsible for the conduct of every other component entity, plaintiffs . . . rely on a theory the New Hampshire Supreme court appears to have rejected. . . .").[13]

In *De Castro*, the plaintiff attempted to impute the contacts of a nonresident parent company's wholly-owned Puerto Rican subsidiaries to the parent company for purposes of

---

[13] Additionally, Atrium's actions cannot be imputed to MCV US Sales because MCV US Sales does not have any ownership interest, either directly or indirectly, in Atrium. *Michnovez*, 795 F. Supp. 2d at 186.

personal jurisdiction.  *De Castro*, 198 F.3d at 283.  In that case, although the subsidiaries were undercapitalized and there was substantial overlap among the officers and directors of the parent and subsidiaries, the First Circuit held that such evidence was not enough to pierce the corporate veil in light of the fact that there was no evidence the parent company controlled the subsidiaries' day-to-day operations and "formal corporate separateness was observed at the most basic level." *Id.* at 284-85.  Here, Atrium and MCV US Sales are sufficiently capitalized, and each has its own officers and directors and maintain their own business activities independently of one another that are responsible for each entity's day-to-day operations.  (Mayer Decl., ¶¶ 14, 21).

In *Ranza*, the Ninth Circuit examined an earlier case on this issue, *Unocal*, and outlined the involvement of the parent company in the subsidiary's operations in *Unocal*, which included:

> (1) involvement in its subsidiaries' acquisitions, divestments and capital expenditures; (2) formulation of general business policies and strategies applicable to its subsidiaries, including specialization in particular areas of commerce; (3) provision of loans and other types of financing to subsidiaries; [and] (4) maintenance of overlapping directors and officers with its subsidiaries....

*Ranza*, 793 F.3d at 1073-74 (quoting *Doe v. Unocal Corp.*, 248 F.3d 915, 927 (9th Cir. 2001), *abrogated on other grounds as recognized in Williams v. Yamaha Motor Co.*, 851 F.3d 1015 (9th Cir. 2017)).  However, the Court in *Ranza* noted that "[t]his level of involvement was insufficient to negate the entities' separate personalities through the observance of corporate formalities, such as adequate capitalization at each entity and the proper documentation of transactions between the entities." *Id.* (citing *Unocal*, 248 F.3d at 927-28).

With this in mind, *Ranza* then examined the facts before it and found the parent was not an alter-ego of the subsidiary.  The facts in *Ranza* showed much greater interdependence between parent and subsidiary than those alleged here:

> To be sure, Nike is heavily involved in NEON's operations. Nike exercises control over NEON's overall budget and has approval authority for large

purchases; establishes general human resource policies for both entities and is involved in some hiring decisions; operates information tracking systems all of its subsidiaries utilize; ensures the Nike brand is marketed consistently throughout the world; and requires some NEON employees to report to Nike supervisors on a "dotted-line" basis. NEON, however, sets its own prices for its licensed Nike products, takes and fulfills orders for its licensed products using its own inventory, negotiates its own contracts and licenses, makes routine purchasing decisions without Nike's consultation and has its own human resources division that handles day-to-day employment issues, including hiring and firing decisions.

*Ranza*, 793 F.3d at 1074. The court also noted that the parent and subsidiary each leased its own facilities, maintained its own accounting books and records, entered into contracts on its own and paid its own taxes. *See id.* Additionally, the plaintiff in *Ranza* failed to present evidence that the subsidiary was undercapitalized, "that the two entities fail to keep adequate records or that Nike [the parent corporation] freely transfers [the subsidiary's] assets, all of which would be signs of a sham corporate veil." *Id.* The court held that the parent's involvement in the subsidiary's business, "though substantial, is insufficient to negate the formal separation between the two entities such that they are functionally one single enterprise." *Id.* at 1075. Here, as in *Ranza,* <u>Plaintiffs have not alleged, and cannot establish, sufficient evidence that would warrant disregarding their corporate forms.</u>

Numerous other courts have looked at similar – and even stronger – allegations than those found in the Master Complaint and have found them insufficient to pierce the corporate veil for jurisdictional purposes. For example, in *Firefighters' Ret. Sys.*, the plaintiff alleged:

- Citgo Group is an integrated financial services holding company that operates through numerous subsidiaries, including [CTM].

- Citgo Group serves as a vehicle by which its operating subsidiaries procure business.

- Citgo Group has no independent revenues of its own; it acts through its offices and locations' [including CTM].

- Despite the separate corporate identities that Citco Defendants used to contract with Leverage, Citco Group both markets and operates itself as a single financial services provider-an industry leader with extensive experience in the field, a reputation for

independence, and in its own words, a company that functions as a reliable fiduciary to safeguard the interests of investors.

- Citco Group's individual corporations are all controlled by Citco Group, which appoints division directors to monitor the daily operations of each division, including, relevant here, the fund services division.

*Firefighters' Ret. Sys.*, 2016 WL 3460396 at *5 (internal quotations and citations omitted). Notably, the court there, *accepting the allegations as true*, held that such allegations "are not clear evidence of interdependence or joint control and, thus, fail to rebut the legal presumption that CTM is separate, distinct, and independent from other subsidiaries of the Citgo Group." *Id.* The *Firefighters' Ret. Sys.* allegations are similar to those in the Master Complaint, (s*ee, e.g.,* Compl., ¶¶ 4, 7, 10-11), and jurisdiction likewise should not be conferred here.

Plaintiffs also attempt to blur the lines between Defendants by alleging that the "Maquet Getinge Group website . . . lists the C-QUR product as one of Maquet Getinge Group's 'biosurgery' products." (Compl., ¶ 10). However, courts have consistently held that using the same marketing or trade name by affiliated companies is not improper and cannot form the basis for disregarding the corporate form. *See, e.g., In re Lac Megantic Train Derailment Litig.*, 210 F. Supp. 3d 218, 225 (D. Me. 2016) (Plaintiffs did not "offer evidence or legal authority to explain how the fact that CP and its affiliates do business under the same trade name is improper or renders CP 'at home' in the United States."); *Ranza*, 793 F.3d 1059 (rejecting the fact that the subsidiary marketed and sold Nike products in Europe and other locations as a basis to pierce the corporate veil); *Goodbye Vanilla, LLC v. Aimia Proprietary Loyalty U.S. Inc.*, 196 F. Supp. 3d 985, 992 (D. Minn. 2016) (similar company names, use of common marketing materials, joint

publication of various written materials and the parent company's alleged "complete control" of

the subsidiary insufficient to create the requisite nexus between the parent and the forum).[14]

      The evidence in the record demonstrates that Atrium, MCV US Sales, and Getinge

maintain their own corporate formalities and Plaintiffs have not alleged sufficient facts to pierce

the corporate veil and impute the contacts of Atrium or MCV US Sales to Getinge under an alter

ego theory.[15]

## IV.   CONCLUSION

      For the above reasons, this Court should dismiss Plaintiffs' claims against Getinge AB for

lack of personal jurisdiction with prejudice, thereby dismissing Getinge from this MDL.  Getinge

has no direct contacts with any forum in the United States, and the contacts of Atrium and MCV

---

[14] Additionally, prior to November 2011, Getinge had no ownership interest or other affiliation with Atrium. (Mayer Decl., ¶ 8).  MCV US Sales has never had an ownership interest in Atrium, and in fact is a subsidiary of one of Atrium's sister companies.  (*Id.* at ¶¶ 7-8).  Even assuming, *arguendo*, that Plaintiff had established sufficient facts to impute Atrium's contacts to Getinge for jurisdictional purposes – and they have not – any claims arising prior to the acquisition of Atrium cannot be imputed to Getinge because Getinge could not have exercised such complete domination of Atrium to make it an alter ego of Getinge prior to that date.  *See, e.g., IMAX Corp. v. The Essel Group*, 2015 WL 6087606, at *5 (N.Y. Sup. Ct. Oct. 9, 2015) ("To establish alter-ego liability, IMAX must allege that the owners of The Essel Group exercised complete domination of [its subsidiary] in respect to the transaction attacked and that such domination was used to commit a fraud or wrong against [IMAX] which resulted in [IMAX's] injury." (internal quotations and citations omitted)).

[15] Plaintiffs also allege that it would be "unjust" to fail to disregard their corporate forms: "Because Atrium's assets and capital are subject to the ownership and control of [MCV US Sales] and Getinge, Atrium is undercapitalized, and the failure to disregard Atrium's corporate form would result in the inequitable and unjust result that Plaintiffs ***may*** be unable to satisfy any judgment ultimately obtained against Atrium."  (Compl., ¶ 14) (emphasis added).  This is not a compelling reason to disregard corporate formalities.  Plaintiffs do not even allege that they **will** suffer an injustice if this Court fails to disregard Atrium's and Getinge's corporate forms, or that they are likely to - only that they **may**.  Plaintiffs have alleged no specific facts regarding how or why Atrium is undercapitalized, or how Getinge is using the corporate forms to perpetuate a fraud on Plaintiffs.[15]  *See De Castro*, 198 F.3d at 285 ("[C]ourts are reluctant to infer injustice unless the particular facts so suggest.").  Further, these conclusory allegations have been directly contradicted by Mr. Mayer, the Chief Financial Officer of Getinge AB.  (Mayer Decl., ¶¶ 21, 26, 28).

US Sales, distantly-related subsidiaries, cannot be imputed to it.  Therefore, Defendant Getinge

AB respectfully requests this Court dismiss Plaintiffs' claims contained in the Master Complaint

and any corresponding Short Form Complaint against it pursuant to Rule 12(b)(2), and dismiss

Getinge from this litigation with prejudice.


Dated: June 6, 2017                              Respectfully submitted,

                                                 **GETINGE AB**

                                                 */s/ Hugh J. Turner Jr.*
                                                 Hugh J. Turner Jr., Esq.
                                                 Enjoliqué D. Aytch, Esq.
                                                 Elan S. Hersh, Esq.
                                                 **AKERMAN LLP**
                                                 Las Olas Centre II, Suite 1600
                                                 350 East Las Olas Boulevard
                                                 Fort Lauderdale, FL  33301-2229
                                                 Telephone:  (954) 463-2700
                                                 Fax: (954) 463-2224
                                                 Email: hugh.turner@akerman.com
                                                           enjolique.aytch@akerman.com
                                                           elan.hersh@akerman.com

**WADLEIGH, STARR & PETERS, PLLC**
Pierre A. Chabot – NHBA # 17606
John Friberg – NHBA # 858
95 Market Street
Manchester, NH 03101
Telephone:  (603) 669-4140
Email: pchabot@wadleighlaw.com
          jfriberg@wadleighlaw.com


                                                 *Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of June, 2017, I electronically transmitted the

foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of

a Notice of Electronic Filing to the following CM/ECF participant:

> */s/Hugh J. Turner Jr.*
> Hugh J. Turner Jr., Esq.
> Enjoliqué D. Aytch, Esq.
> Akerman LLP
> Las Olas Centre II
> 350 East Las Olas Boulevard
> Suite 1600
> Fort Lauderdale, FL 33301-2999