**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| **IN RE: ATRIUM MEDICAL CORP. C-QUR MESH PRODUCTS LIABILITY LITIGATION** | **Master File No. 1:16-md-02753-LM MDL No. 2753** |
| **THIS DOCUMENT RELATES TO:** **ALL CASES** | **LANDYA B. MCCAFFERTY U.S. DISTRICT JUDGE** |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR OBJECTION TO DEFENDANT GETINGE, AB'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

**COME NOW,** Plaintiffs in this MDL proceeding, and file the instant Memorandum of Law in Support of their Objection to Defendant Getinge AB's Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. No. 76). In support of their Objection, Plaintiffs show as follows:

## I.    BACKGROUND

Despite actively appearing in this litigation for more than six months—and even requesting this venue from the Judicial Panel on Multidistrict Litigation—Getinge AB (*hereinafter* "Getinge") urges this Court to conclude that it cannot properly be hauled into court in any jurisdiction in this country for any C-Qur product liability action. In essence, Getinge argues as follows: (1) Getinge itself does not design, manufacture, promote, or sell any of the C-Qur products at issue in this MDL; (2) because it operates solely through a complex structure of United States-based holding companies and interrelated wholly-owned subsidiaries, Getinge claims it does not conduct business in the United States; and (3) Getinge cannot be subject to personal jurisdiction based on the conduct or contacts of its subsidiaries, which resulted in Plaintiffs' injuries.

Getinge's motion conspicuously fails to mention the fact that Getinge has consistently appeared, without objection, and actively participated in this MDL—as well as the related New Hampshire State Court litigation. Based on Getinge's active participation in this MDL to date, Getinge has waived any alleged jurisdictional defense. Furthermore, Getinge should be judicially estopped from asserting such a defense based on its appearances and participation in similar actions in multiple courts throughout the country, both as plaintiff and defendant.

Getinge's present motion further fails to disclose that Getinge and Maquet have held themselves out to the public as the owners and sellers of the C-Qur products, and that Getinge and Maquet consistently characterize Atrium as a "former" company. As alleged in Plaintiffs' Master Long Form Complaint (*hereinafter* "Master Complaint"), and as reflected in Getinge's own publicly available marketing materials, Getinge is directly responsible for manufacturing, designing, promoting and selling the C-Qur products since the November 2011 merger, and is thus subject to personal jurisdiction based on its own conduct and actions. Furthermore, as Plaintiffs' Master Complaint alleges, Atrium and/or Maquet's actions should be imputed to Getinge because its supposed "subsidiaries" are mere alter-egos or instrumentalities of Getinge.

In its motion, Getinge represents to this Court that it is a Swedish company with no ties to, or presence in, the United States. But Getinge previously told this Court that it does business as "Getinge Group," which has a New Jersey business address—and which also happens to be the very same address as its "subsidiary" and codefendant, Maquet. Indeed, Getinge represented to the JPML, on multiple occasions, that it has a New Jersey address—not a Sweden address. Getinge's bald assertions that it is not present in the United States are dubious, at best.

Plaintiffs maintain that Getinge's motion should be denied on its face based on one or all of the following: (1) waiver, (2) direct liability for conduct after the 2011 acquisition, (3)

Getinge's proffer is contradicted by its representation that it has a New Jersey address; and/or (4) the contacts imputed to it by its "subsidiaries." However, Getinge asks this Court to decide this motion, which necessarily entails a number of fact-specific and fact-intensive inquiries, before any discovery has been conducted in this MDL. As a result, Plaintiffs are simultaneously moving, in the alternative, for leave to conduct discovery limited to personal jurisdiction.[1]

## II.    STANDARD OF REVIEW

While the plaintiff bears the burden of establishing that the court has personal jurisdiction over a defendant, "[o]nly a prima facie showing is necessary to carry this burden where, as here, the defendant has challenged personal jurisdiction through a motion to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure." *Foss Mfg Co., LLC v. S Group Auto., LLC,* C.A. 08-246-JL, 2009 U.S. Dist. LEXIS 26121, at *3 (D.N.H. Mar. 27, 2009) (citing *Daynard v. Ness, Motley, Loadholt, Richardson, & Poole, P.A.*, 290 F.3d 42, 51 (1st Cir. 2002)). When considering whether a plaintiff has made a prima facie showing,[2] a district court accepts the plaintiff's pleadings and evidence[3] "as true (whether or not disputed) and construe[s] them in the light most congenial to the plaintiff's jurisdictional claim." *Mass. Sch. Of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998). *See also, Foster-Miller, Inc. v. Babcock v. Wilcox Canada*, 46 F.3d 138, 145 (1st Cir. 1995). Facts proffered by defendant are considered, but only to the extent they are not disputed. *Mass. Sch. Of Law at Andover, Inc.*, 142 F.3d at 34.

---

[1] Pursuant to Local Rule 7.1(a), Plaintiffs' Motion for Leave to Conduct Discovery Limited to Personal Jurisdiction is a separate pleading with a separate memorandum.

[2] The prima facie standard is necessary where, as here, jurisdictional facts are intertwined with the merits. *See Data Disc, Inc. v. Systems Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977).

[3] "A court considering a motion to dismiss on personal jurisdiction grounds may properly consider documents attached to an opposition, even if they contain hearsay, so long as the evidence 'bears circumstantial indicia of reliability.'" *Presby Patent Trust v. Infiltrator Sys.*, 2015 U.S. Dist. LEXIS 715672, 2015 D.N.H. 111 (D.N.H. 2015)(*quoting Akro Corp. v. Luker*, 45 F.3d 1541, 1546-47 (Fed. Cir. 1995)).

### III.   <u>ARGUMENT</u>

**a.**    **Getinge has waived personal jurisdiction and/or should be judicially estopped from asserting such a defense here based upon its general appearances and active participation in courts throughout the country, including the New Hampshire State Court and this MDL.**

Lack of personal jurisdiction is a qualified defense that can be waived "by failure [to] assert [it] seasonably, by formal submission in a cause, or by submission through conduct." *Neirbo Co. v. Bethlehem Corp.*, 308 U.S. 165 (1939). "[I]f [a] defendant appears, a subsequent contest of the court's jurisdiction over the person must be timely." *Marcial Ucin, S.A. v. SS Galicia*, 723 F.2d 994, 997 (1st Cir. 1983). In *Precision Etchings & Findings, Inc. v. LGP Gem, Ltd.*, the First Circuit examined when a defendant's conduct may be deemed to waive a personal jurisdiction defense. 953 F.2d 21, 25 (1ˢᵗ Cir. 1992). As explained in that case, a party may waive personal jurisdiction by participating in or encouraging judicial proceedings, including participation in hearings or seeking affirmative relief. *Id.* A party may also waive personal jurisdiction when it "lend[s] an appearance of submission through extended inaction." *Id.* Another way to view this issue is to "ask whether a defendant's conduct prior to raising the defense has given the plaintiff **'a reasonable expectation' that the defendant will defend the suit on the merits or whether the defendant has caused the court to 'go to some effort that would be wasted if personal jurisdiction is later found lacking.'** " *King v. Taylor*, 694 F.3d 650, 659 (6th Cir. 2012) (*quoting Gerber v. Riordan*, 649 F.3d 514, 519 (6th Cir. 2011) (emphasis added).

Getinge waived a personal jurisdiction defense by failing to assert it seasonably. *See Neirbo Co.*, 308 U.S. at 165; *see also, Marcial Ucin, S.A.*, 723 F.2d at 997. Getinge's actions in this MDL to date do not support a prompt objection on the basis of personal jurisdiction. After over six months of appearing before this Court and consenting to this Court's Orders, without

any objection, Getinge raises the defense of personal jurisdiction for the very first time in this motion. Getinge has appeared generally, without reservation, and has actively participated in this MDL from the outset. The following will briefly recount the history of Getinge AB's appearance before this Court and participation in this MDL:

- October 25, 2016 – November 1, 2016: Defendants' counsel file certificates of service with each of their filings, listing Getinge's address as being: 45 Barbour Pond Drive, Wayne, NJ 07470. (JPML Dkt. Nos. 7, 14-2, 16-2, 21-1, 23-1, 29-1, 30-1, attached to the Affidavit of Jonathan Orent as **Exhibit 1**).

- January 19, 2017: Defendants' counsel files a Rule 26.1 Corporate Disclosure on behalf of Getinge AB. (Dkt. No. 9).

- February 7, 2017: The Court holds a status conference.
  - o Counsel appear telephonically and state that they represent all named Defendants, including Getinge AB. (2/7/17 T., 5:5-8).
  - o Counsel explains that Getinge AB is the correct corporate name, but that **Getinge AB also does business as Getinge Group**. (*Id.*, 6:23-7:2) (emphasis added).
  - o Law clerk explains that Getinge USA, Inc. and Getinge AB are represented by defense counsel. (*Id.*, 7:16-8:4).
  - o Counsel agrees on behalf of all Defendants to waive venue objections in the MDL and to not object to direct filing in the MDL. (*Id.*, 8:16-9:8).
  - o Counsel states, on behalf of all Defendants, they have no objection to waiving formal service, while retaining defenses other than process. (*Id.*, 10:13-15).
  - o Counsel does not mention any personal jurisdiction objection or defense on behalf of Getinge or any other defendant. *See id.*

- February 10, 2017: Case Management Order Number 2 is entered, allowing for direct filing and waiver of service, including Getinge AB.[4]

- February 17, 2017: Pursuant to this Court's request, an introductory brief is filed, on behalf of all Defendants, regarding all cases filed to date. (Dkt. No. 17).
  - o In Section 3.1.11, entitled "Other Information Including Dispositive Issues," there is no mention of any personal jurisdiction defense or objection. Instead, Defendants contend that because Getinge did not design, manufacture, or sell any C-Qur products, they cannot be liable to Plaintiffs. Defendants indicate that if the parties cannot come to an agreement, they would file a Motion for Summary Judgment on

---

[4] Throughout this MDL proceeding, Defendants have also filed several waivers of service on behalf of Getinge. *See, e.g.*, Dkt. Nos. 49, 61, 68, 70, 72, 78, 87, 88, 89, and 90.

the basis of no liability; thus, indicating an express intent to defend the case on the merits.[5]

- February 24, 2017: The Court holds a status conference.
  - Defense counsel announces appearance on behalf of "all Defendants in the case." (2/24/17 T., 3:15-16).
  - Defendants' counsel discusses responding to complaint when filed, but does not raise or mention personal jurisdiction. (*Id.*, 91:1-11).

- February 24, 2017: Defense counsel files a general Notice of Appearance on behalf of all Defendants, including Getinge, in all cases. (Dkt. No. 24.)

- March 13, 2017: The Court enters Case Management Orders 3, 3A, 3B, 3C. (Dkt. Nos. 39-42).
  - Among other things, these Orders establish monthly status conferences, mandate a meet and confer process prior to status conference, require the parties to file joint agendas prior to status conferences, provides a structure and schedule for discovery in these cases, and mandate that particular issues be resolved by certain dates.

- April 6, 2017: Pursuant to this Court's request in Case Management Order 3, the parties submit a joint agenda for the April 13, 2017 status conference, and it is signed by counsel on behalf of all Defendants. (Dkt. No. 50).
  - Agenda items include: discovery, an electronically stored information protocol (hereinafter "ESI Protocol"), a protective order, a coordination order, Rule 26 disclosures, Plaintiff Profile Form, Plaintiff Fact Sheets, Defendant Fact Sheets, common benefit order, pathology preservation, status of master pleadings, and monthly status conferences (no mention of personal jurisdiction objection).

- April 13, 2017: The Court holds a status conference.
  - Defendants' counsel announce appearance "for defendants." (4/13/17 T., 3:10-13).
  - Defendants' counsel states that this litigation is the same as the New Hampshire State Court litigation. (*Id.*, 34:19-25, 35:23).
  - Plaintiffs' counsel explains that Atrium was acquired in 2011, and that Plaintiffs have several theories against the parent corporations, including successor liability and piercing the corporate veil. (*Id.*, 36:10-28).
  - Defendants' counsel does not raise an objection nor mention personal jurisdiction in her response (or otherwise, at any time, during this hearing). (*Id.*, 37:11-22).

- April 14, 2017: Plaintiffs file Master Complaint. (Dkt. No. 53).

- May 4, 2017: Pursuant to the mandate in Case Management Order 3, Defendants file a joint agenda for the May status conference. (Dkt. No. 60).

---

[5] *See generally,* I. Haramati, *Procedural History: The Development of Summary Judgment as Rule 56*, 5 N.Y.U. J.L. & LIBERTY 173 (2010) (discussing the development of Rule 56 and quoting the originator's intent for summary judgment to be a judgment on the merits).

- o Agenda items include: protective order, coordination order, Short Form Complaint, Plaintiff Profile Form, Plaintiff Fact Sheet, Defendant Fact Sheet, ESI Protocol, litigation hold information, and common benefit order.
- o Motions are filed by both sides regarding: ESI, Litigation Hold Information, Protective Order. (Dkt. Nos. 60-1 through 60-8).
- o No mention of personal jurisdiction defense or objection.

- May 11, 2017: The Court holds a status conference.
  - o Defense counsel announce appearance on behalf of all Defendants. (5/11/17 T., 4:6-25).
  - o No mention of any personal jurisdiction defense or objection. (*See* 5/11/17 T.)
  - o The Court hears argument from both sides regarding the contested motions. *See id.*

- May 25, 2017: Defendants file an Assented to Motion to Extend Time to Answer. (Dkt. No. 66).

At no time until the filing of this Motion to Dismiss has Getinge ever qualified its appearance in this MDL, or otherwise indicated any objection to this Court's (or any of the transferor court's) jurisdiction. Rather, Getinge voluntarily submitted itself to this Court's jurisdiction by submitting to, and complying with, this Court's Orders on numerous occasions, without any reservation. Getinge appeared, through counsel, before this Court several times, without ever contesting personal jurisdiction. In lieu of immediately objecting on the basis of personal jurisdiction, Getinge was open to engaging in a dialogue about discovery very early in this MDL. *See* 2/24/17 T., 74-77; 85:22-25; 88:5-7; *see also* Dkt. Nos. 17, 50, 60, 60-1—60-8. In fact, the parties met and conferred often regarding issues surrounding the mechanics of the litigation and discovery, including working toward establishing an ESI Protocol and a Coordination Order. Getinge further filed affirmative relief with this Court by way of a Motion to Extend Time to Answer as well as contested motions, at which point the Court heard argument during the May 11, 2017 status conference. *See* Dkt. Nos. 60-1—60-8, 66.

Over the course of this litigation, Getinge has been actively participating in and encouraging the current proceedings, thereby giving Plaintiffs a reasonable expectation that it

will defend the suit on the merits. *See Precision Etchings*, 953 F.2d 21, 25; *see also King*, 694 F.3d at 659. By generally appearing before this MDL Court, appearing at status conferences, presenting oral argument, filing pleadings, requesting relief, entering agreements with Plaintiffs' counsel, requesting extensions, waiving service, waiving venue objections, and stating on the record its intent to defend these cases on their merits,[6] Getinge has waived any personal jurisdiction defense here. *See, Pilgrim Badge & Label Corp. v. Barrios*, 857 F.2d 1, 3 (1st Cir.1988) ("Unlike subject matter jurisdiction, personal jurisdiction may be acquired in a number of ways, including voluntary appearance."); *U.S. to the use of Combustion Systems Sales, Inc. v. Eastern Metal Products & Fabricators, Inc.,* 112 F.R.D. 685, 687 (M.D.N.C.1986) ("Waiver has been inferred in a wide variety of situations, even when the defense has been formally raised in an answer, by conduct and inaction, such as entering an appearance, filing motions and requesting relief, or participating in hearings or discovery.").[7]

Getinge's argument that it is not subject to personal jurisdiction "anywhere in the United States" is further undermined by its actions in other courts in this country to date. As this Court is already aware, Getinge is a defendant in the related C-Qur product liability litigation in the Hillsborough County, New Hampshire Superior Court. As Defendants' counsel have acknowledged, both before the JPML and before this Court, this state court litigation involves similar product liability claims and the same products at issue in this MDL. Due to the similarity between these two parallel litigations, Defendants acknowledge that coordination between this MDL and the state court, to the extent possible, will help promote the goals of efficiency, economy, convenience and avoidance of duplication of efforts. Indeed, Defendants have sought

---

[6] *See* Dkt. No. 17; *see supra, n.3.*

[7] *See also, Manchester Knitted Fashions, Inc. v. Amalgamated Cotton Garment & Allied Industries Fund,* 1990 U.S. Dist. LEXIS 20027 (D.N.H. 1990) (In addition to making a general appearance, Defendant waived its Rule 12 defense by requesting stipulations and by filings motions with the court).

an Order from this Court intended to coordinate these two litigations. Getinge has been an active participant in the state court litigation for more than two years, where it has not raised a personal jurisdiction defense (either by answer or motion).[8] *See*, Complaints and Answers, Hillsborough Co. Superior Court, attached to the Orent Affidavit as **Exhibit 2**.[9] Importantly, Getinge is represented in the New Hampshire State Court litigation by the very same counsel who have generally appeared on behalf of Getinge, filed pleadings, appeared at hearings, and agreed to orders before this MDL court.

New Hampshire is not the only place where Getinge has submitted to the jurisdiction of U.S. Courts as a party to litigation involving its hernia mesh products. Getinge was also named as a defendant, appeared and was represented by counsel, and participated in a multi-plaintiff product liability litigation in the Alameda County, California state court involving Atrium hernia mesh products. In that litigation, Getinge "agree[d] to submit to the jurisdiction of the courts of the Out-of-State Plaintiffs' home states." *See*, Stipulation to Jurisdiction, Alameda Co., California Superior Court, Case No. RG14730177, attached to Orent Affidavit as **Exhibit 3**.[10] Pursuant to this Stipulation, some of the non-California plaintiffs' cases were re-filed in U.S. District Courts, naming Getinge. *See*, Amended Complaint, *Carson v. Atrium Med. Corp., et al.*, W.D. Pa. Case No. 2:15-cv-00830, attached to Orent Affidavit as **Exhibit 4**; *Paredes v. Atrium*

---

[8] It is difficult to conceive how Getinge could contend that it is not subject to jurisdiction anywhere in this country, despite having never asserted a personal jurisdiction defense in the State Court litigation, which has been pending for several years less than 40 miles from this Court.

[9] *S.M.W. Seiko, Inc. v. Howard Concrete Pumping Co., Inc.*, 170 F.Supp.2d 152, 155 (D.N.H.2001) ("In New Hampshire, a defendant who files a general appearance waives all objections to personal jurisdiction.").

[10] In this Stipulation, Getinge stipulated to jurisdiction ("agree[d] to submit to the jurisdiction of the courts") in New Hampshire, New Jersey, Indiana, Georgia, Alabama, Pennsylvania, Hawaii and Arkansas. *See* **Ex. 3 to Orent Affidavit.**

*Med. Corp.*, S.D. Cal. Case No. 14-cv-0499, attached to Orent Affidavit as **Exhibit 5**.[11]   It plainly appears that Getinge and its related entity co-defendants in the California State Court litigation agreed to submit themselves to jurisdiction in other courts to avoid having to litigate a group of related product liability cases in California, which undoubtedly worked to Getinge's litigation advantage there.  Getinge should be judicially estopped from taking an inconsistent position here.[12]

Finally, and perhaps most tellingly, Getinge has purposefully subject itself to and availed itself of the benefits of United States' courts and laws **as a plaintiff**, filing a civil action for damages against Atrium's founder and primary shareholder in a Delaware State Court arising from Getinge's purchase of Atrium—specifically because Getinge is legally responsible for Atrium's conduct and products. *See, Getinge AB v. Steve Herweck, in his capacity as the Stockholder Representative*, Delaware Court of Chancery Case No. 9145, Complaint attached to Orent Affidavit as **Exhibit 6**.  The *Herweck* lawsuit in and of itself severely discredits, if not disproves, Getinge's personal jurisdiction defense here. *See id.  See also, infra,* §III(b)(2)(i). Given that Getinge purposefully availed itself of the benefits and protections of this country's laws and our civil justice system—specifically related to its purchase of Atrium and its obligation for Atrium's liabilities—it is unreasonable for Getinge to now urge this Court to find that it would be somehow unfair or unforeseeable for it to be a party in this MDL related to

---

[11] It is instructive to observe that Getinge was represented in that product liability litigation involving Atrium hernia mesh devices by the same attorneys representing Getinge in this MDL (and in the related N.H. State Court litigation). *See*, **Ex. 5 to Orent Affaidvit**, *Paredes* Complaint, Certificate of Service (showing service on attorneys Hugh Turner and Enjolique Aytch of Akerman law firm, Getinge's defense counsel here).

[12] As explained in *Alternative System Concepts, Inc. v. Synopsys, Inc.*, the doctrine of judicial estoppel is an equitable principle intended to prevent parties from asserting inconsistent positions before different courts to their litigation advantage, which can lead to inconsistent legal rulings and endangers the integrity of the judicial process. 374 F.3d 23 (1st Cir.2004).

precisely the same subject matter. *Lyman Steel Corp. v. Ferrostaal Metals Corp.*, 747 F.Supp. 389, 396-97 (N.D. Ohio 1990) ("Voluntarily filing a lawsuit…where the facts similarly arise from the same series of events as another lawsuit can be deemed another indication of purposeful availment of the forum.").

Particularly in light of its litigation history in this MDL as well as in courts throughout the country, as both plaintiff and defendant, Getinge's jurisdictional defense rings hollow and should be rejected outright. Accordingly, Plaintiffs respectfully submit that Getinge's Motion to Dismiss should be denied because it has waived personal jurisdiction.

b.    **Plaintiffs have made prima facie showing of personal jurisdiction.**

Section 28 U.S.C. § 1407, "authoriz[es] the federal courts to exercise nationwide personal jurisdiction."  *In re WellNX Marketing and Sales Practices Lit.,* 2010 U.S. Dist. LEXIS 96582, 2010 WL 3652457, *23-25 (D. Mass. Sept. 15, 2010) (q*uoting, In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 163 (2d Cir. 1987)). *See also, In re FMC Corp. Patent Litig.*, 422 F. Supp. 1163, 1165 (J.P.M.L. 1976) ("Transfers under Section 1407 are simply not encumbered by considerations of in personam jurisdiction and venue. . . . Following a transfer, the transferee judge has all the jurisdiction and powers over pretrial proceedings in the actions transferred to him that the transferor[13] judge would have had in the absence of transfer.").  In assessing personal jurisdiction, a district court must decide whether contacts between the defendant and the forum are sufficient to satisfy the long arm statute and to comport with the Fourteenth Amendment's Due Process clause.  *See e.g., GT Solar, Inc. v. Goi*, 2009 D.N.H. 156, *25 (D.N.H. Oct. 17, 2009).

In the present case, Getinge challenges whether Plaintiffs can establish personal jurisdiction in any U.S. state, including the transferor courts.[14]  In some of the transferor states, the long arm statute allows personal jurisdiction to the extent allowed by Due Process,[15] such that the two analyses collapse into one.  *See e.g., McClary v. Erie Engine & Mfg. Co.,* 856

---

[13] When considering a personal jurisdiction challenge in multi-district litigation, a district court applies the substantive state law of the transferor court and the federal law of its own circuit.  *See e.g., Jones v. Fairbank Reconstruction Corp.,* 2012 U.S. Dist. LEXIS 128946, at *23 (D. Me. Sept. 11, 2012); *see also, In re WellNX Marketing and Sales Practices Lit.,* 2010 U.S. Dist. LEXIS 96582, *23-25 (D. Mass. Sept. 15, 2010). For a thorough review of this principle, see *In re Chinese Manufactured Drywall Prods. Liab. Litig.,* 894 F.Supp.2d 819, 836-37 (E.D. La. 2012).

[14] The transferor courts include: Arkansas, Arizona, Florida, Georgia, New Hampshire, Indiana, Kansas, Kentucky, Louisiana, Mississippi, Missouri, North Carolina, Ohio, Pennsylvania, Tennessee, and Texas.
[15] The transferor courts whose state law allows personal jurisdiction over a foreign defendant to the fullest extent of due process include: Arkansas, Arizona, and New Hampshire.  *See* Ark. Code Ann. §16-4-101(B); *see also*, Ariz. R. Civ. P. Rule 4.2(a); *see also*, N.H. Rev. Stat. Ann. 510:4.

F.Supp. 52, 55 (D. NH. 1994). The remaining states' law allow personal jurisdiction in cases, such as this, where the defendant committed a tortious act resulting in an injury in the forum state, where the out-of-state defendant solicits business from, or conducts business in, the forum state, or where the cause of action otherwise arises in the forum state.[16] Furthermore, most states' long arm statutes provide that the conduct giving rise to jurisdiction can be committed by or through an agent.[17]

It is well settled that our principles of personal jurisdiction are founded on traditional notions of "fair play and substantial justice" and the primary inquiry is whether the defendant had minimum contacts with the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464 (1985). In assessing the "minimum contacts" necessary to give rise to personal jurisdiction, the First Circuit looks at three factors: (1) relatedness, (2) purposeful availment, and (3) reasonableness. *See Negron-Torres v. Verizon Commc'ns, Inc.,* 478 F.3d 19, 24 (1st Cir. 2007). In a tort action, like the claims in this MDL, courts look at whether the defendant's conduct caused the Plaintiffs' injuries. *See e.g. Mass. Sch. of Law*, 142 F.3d at *21-22. Our Supreme Court has consistently rejected the notion that the absence of physical presence can defeat personal jurisdiction because "it is an escapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications." *Burger King Corp.*, 471 U.S. at 476. Thus, the relevant question is not necessarily whether Getinge is physically

---

[16] *See* Fla. Stat. Ann. §48.193(1)(a)(6); *see also*, Ga. Code Ann. §9-10-91; *see also*, Ky. Rev. Stat. §§454.210(2)(a)(4), 454.210(2)(a)(5); *see also*, 42 Pa. Cons. Stat. Ann. §§5322(a)(1)(3), 5322(a)(4); *see also*, Kan. Stat. Ann. §60-308(b)(1)(G); *see also*, Ind. R. Trial. P. Rule 4.4(A)(3); *see also*, La. Rev. Stat. Ann. §13-3201(A)(4); *see also*, Miss. Code Ann. §13-3-57; *see also*, Mo. Rev. Stat §506.500; *see also*, Ohio Rev. Code Ann. §2307.382(A)(4); *see also*, N.C. Gen. Stat. §1-75.4(4); *see also*, Tenn. Code Ann. §20-2-201(a); *see also*, Tex. Civ. Prac. & Rem. Code §17.042.

[17] *See* Fla. Stat. Ann. §48.193; *see also*, Ga. Code Ann. §9-10-91; *see also*, Ky. Rev. Stat. §§454.210; *see also*, 42 Pa. Cons. Stat. Ann. §§5322; *see also*, Kan. Stat. Ann. §60-308; *see also*, Ind. R. Trial. P. Rule 4.4; *see also*, La. Rev. Stat. Ann. §13-3201; *see also*, Mo. Rev. Stat §506.500; *see also*, Ohio Rev. Code Ann. §2307.382.

present in the forum, but whether it directed its conduct there—either directly, or through its "subsidiaries." *See id.*

As will be explained in detail below, Plaintiffs' well-pled allegations, as well as Plaintiffs' supplemental proffer of evidence, clearly establish a prima facie showing of personal jurisdiction. In examining the factors, it is evident that: (1) Plaintiffs' claims plainly arise out of Defendants' contacts with the forum states—namely Defendants directed sales of their product to the forum states, where Plaintiffs were injured such that Getinge is liable directly and as a parent company, based on the actions of its agents; (2) Getinge purposefully availed itself of the benefits of the forum states by benefitting from sales there, and by engaging in related tort action in various courts throughout this country; and (3) asserting personal jurisdiction over Getinge would be reasonable[18] in light of the fact that Defendants are represented by the same counsel such that any supposed burden seems quite low, the forum states have an interest in adjudicating their injured citizens' claims, Plaintiffs have a strong interest in obtaining convenient relief by way of this MDL, and similarly, this Court has an interest in the most effective resolution. *See e.g. In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 894 F.Supp.2d 819, 859-860 (E.D. La. 2012) (the MDL promotes the goals of efficiency, economy, convenience and avoidance of duplication of efforts).

---

[18] The reasonableness inquiry turns on an examination of the following "Gestalt factors": (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies. *See, e.g., Adelson v. Hananel,* 510 F.3d 43 (1st Cir. 2007)

1. **Getinge is directly liable for any products implanted after the November 2011 acquisition of Atrium because Getinge was directly responsible for the manufacture, promotion, marketing and sale of those products.**

Initially, with respect to plaintiffs implanted with an Atrium C-Qur device after Getinge's November 2011 acquisition of Atrium, the Master Complaint specifically alleges that Getinge was directly responsible for the design, development, manufacture and sale of the C-Qur devices. (Dkt. No. 53, ¶¶ 9, 10, 15-16, 18).  For purposes of this motion to dismiss, Plaintiffs' pleadings and proffer must be taken as true, and must be construed most strongly in favor of the plaintiffs. *See Mass. Sch. Of Law at Andover, Inc.*, 142 F.3d at 34.  Aside from the factual averments of the Master Complaint, publicly-available documents further demonstrate that Getinge holds out the C-Qur products as its own, and offers them for sale as Getinge products.  For example, a Getinge advertisement in General Surgery News promotes the C-Qur family of products, depicts the C-Qur device, and directs customers to the Getinge website (www.getingegroup.com). *See*, General Surgery News Getinge C-Qur advertisement, attached to Orent Affidavit as **Exhibit 7**. Similarly, Getinge's website (www.getinge.com) includes a photograph of a C-Qur device and identifies the C-Qur product as one of Getinge's hernia mesh products.  Beneath the C-Qur photo, Getinge's website states as follows:

> **Getinge's** full line of hernia repair products includes **our** line of bare polypropylene mesh products along with **our** first-to-market Omega 3 bioabsorbable oil fatty acid (O3FA) coated surgical mesh, C-QUR. This novel technology coats **our** ProLite and ProLite Ultra brand polypropylene surgical mesh products used for soft tissue and hernia repair.

Website screen shot from https://www.getinge.com/int/products/hospital/ (last viewed 6/15/17), attached to Orent Affidavit as **Exhibit 8**. (emphasis added).

While Plaintiffs are not required to prove their factual allegations at this stage of these proceedings, the facts nonetheless demonstrate that the assertions of "fact" in the Declaration

filed in support of this motion are inaccurate, at best.[19]  At a minimum, a factual dispute exists

regarding Getinge's direct legal responsibility for those C-Qur products sold and/or implanted

following the merger with Atrium, and such factual dispute should not be resolved by this

motion with respect to these "post-merger" products.  Furthermore, as Defendants' proffer is

heartily disputed by Plaintiffs, it need not be considered.  *See, e.g., Mass. Sch. Of Law at

Andover, Inc.*, 142 F.3d at 34.

> **2.**  **Getinge's admission to this Court that Getinge does business as "Getinge Group," which has a New Jersey business address, contradicts Getinge's proffer and is evidence supporting denial of Getinge's motion on its face.**

As set forth above, Getinge's counsel explained in a hearing to this Court that Getinge is

"the same thing as" Getinge Group and that Getinge "does business as" Getinge Group.[20]  While

counsel's representations to this Court are consistent with publicly-available information, it flatly

contradicts Getinge's proffer of evidence in support of its Motion.  Further, this admission is

quite telling of the alter ego issues at play in the instant litigation.

In fact, Getinge (d/b/a Getinge Group) holds itself out as the present embodiment of the

entity "formerly known as" Atrium Medical Corp., and as the owner/seller of the C-Qur product

line with a New Jersey business address.  For example, in a recent letter sent from Getinge to

---

[19] Without belaboring the point, it is worth noting that Getinge's website and advertisements flatly refute several averments in the Declaration filed in support of this motion, including the claim that "Getinge does not…sell or distribute any products" and "Getinge did not…advertise, promote, market, distribute and/or sell C-QUR Mesh products." (Dkt. No. 76-2, ¶ 11).  Getinge undeniably advertises, promotes and markets a broad range of products – including but not limited to hernia mesh products generally, and the C-Qur mesh products specifically.

[20] "THE LAW CLERK: Your Honor -- this is Dan, Dan Fisher, the judge's law clerk.
I'm just wondering -- based on my understanding from defense counsel, and she can correct me if I'm wrong, that Getinge Group AB doesn't actually exist; is that -- is that right? **It's essentially the same thing as Getinge AB**? MS. AYTCH: **That is correct. Getinge AB is its corporate name. It does business as Getinge Group sometimes in marketing, but Getinge AB is its…corporate name**." 2/7/17 T., 6:16-7:2. (emphasis added).

customers regarding a competitor's hernia mesh product which was withdrawn from the market, Getinge represented that:

> "in an effort to minimize any impact [of the withdrawal] on patients, **Maquet Medical Systems USA/Getinge Group (formerly Atrium Medical Corporation)** is positioned to support your products needs with <u>our</u> **C-QUR MOSAIC® Mesh product line….** Please let us know how we can assist during this disruption by contacting **your local Maquet/Getinge Biosurgery Sales Representative…."** (6/17/16 Getinge Group letter to customers, attached to Orent Affidavit as **Exhibit 9**)

Moreover, this letter directs customers to the **Getinge** website ([www.getingegroup.com](www.getingegroup.com)), and lists Getinge's address as follows: Getinge Group, 45 Barbour Pond Drive, Wayne, NJ 07470[21]—the very same address as Maquet. Further, Getinge's own representation to the JPML was that its address is New Jersey, not Sweden.[22]

Based on counsel's admissions to this Court that Getinge does business as (and is interchangeable with) "Getinge Group," which has a New Jersey address, and the publicly-available information reflecting the same, there is more than sufficient evidence to support personal jurisdiction over Getinge, separate and distinct from any contacts or conduct of Atrium. Getinge's motion should therefore be denied.

> **3.** **Even without the benefit of any jurisdictional discovery, the facts available to Plaintiffs establish a prima facie case of personal jurisdiction under three alternative legal theories: assumption of liability; agency; and alter ego.**

---

[21] This same New Jersey address was also listed by Defendants for Getinge Group in every single Proof of Service Defendants filed in the JPML proceeding. *See* **Ex. 1 to Orent Affidavit.** *See also,* JMPL Case MDL No. 2753 (JPML Dkt. Nos. 7, 14-2, 16-1, 21-1, 23-1, 29-1, and 30-1). Thus, Getinge's own representation to the JPML was that it has a New Jersey address. These facts – and counsel's admissions on the record – directly refute the averment in Getinge's Declaration that "Getinge does not own, operate, or maintain any facilities, offices, or places of business in the fifty (50) states or U.S. territories." They certainly provide ample evidence to deny Getinge's motion to dismiss.

[22] *See* **Ex. 1 to Orent Affidavit.** *See also,* JMPL Case MDL No. 2753 (JPML Dkt. Nos. 7, 14-2, 16-1, 21-1, 23-1, 29-1, and 30-1).

With respect to plaintiffs implanted prior to Getinge's acquisition of Atrium, the law provides that a parent, such as Getinge, may be subject to personal jurisdiction based on the contacts of its subsidiaries, including Maquet and/or Atrium here, under three alternative theories, which also form the basis of liability: (1) assumption of liabilities; (2) agency; and (3) alter ego.[23]

Getinge's motion inexplicably fails to mention several important facts that inform the jurisdictional analysis here. When Getinge acquired Atrium by way of a "reverse triangular merger," Getinge assumed Atrium's liabilities, including product liability claims.[24] While seeking refuge in a series of complex corporate transactions and its own labyrinthine corporate structure, Getinge completely ignores perhaps the single critical fact bearing on its motion: Getinge has taken affirmative action to render Atrium a "former" company. Getinge now holds itself and/or Maquet—not Atrium—out to the public as the seller of the C-Qur products at issue in this MDL. Accordingly, the contacts of its subsidiaries should be imputed to Getinge and Getinge should be held to answer for the claims asserted by the plaintiffs in this MDL.

      i.    <u>As adequately alleged in the Master Complaint, the facts available to Plaintiffs demonstrate Getinge's assumption of Atrium's liabilities.</u>

An acquired entity's jurisdictional contacts may be imputed to a purchasing entity where the purchaser expressly or impliedly assumes the acquired entities liabilities. *See, e.g.*, *Perry Drug Stores v. CSK Auto Corp.*, 93 Fed App'x 677, 681 (6th Cir. 2003) ("A court may impute the jurisdiction of a corporate predecessor to its successor where the successor expressly assumed

---

[23] It is well settled that the actions of a corporation's agent or subsidiary can be imputed to it for purposes of the jurisdictional inquiries. *See e.g., Daynard*, 290 F.3d at 55-60; *see also, Harris Rutsky & Co. Ins. Serv. Inc. v. Bell & Clements Ltd.,* 328 F.3d 1122, 1134 (9th Cir. 2003). Importantly, neither Atrium nor Maquet have not objected to personal jurisdiction in their motion to dismiss.

[24] *See e.g.*, the Herwick complaint **Ex. 6 to Orent Affidavit** (Getinge's complaint against the founder of Atrium due to Getinge's assumption of Atrium's liabilities).

the liability of the predecessor corporation."); *see also, City of Richmond, Va. v. Madison Mgmt. Group, Inc.*, 918 F.2d 438, 454-55 (4th Cir. 1990) (where evidence supported jury's finding that purchaser impliedly assumed acquired corporation's liabilities—despite purchaser's denial of assumption—acquired corporation's jurisdictional contacts were imputed to purchaser); *see also, Hammond v. Monarch Investors, LLC*, 2010 WL 2674401, *3-*4 (S.D.Cal. 2010).

Despite its CFO's Declaration, there are ample facts demonstrating that Getinge has assumed Atrium's liabilities.[25]  For example, in its Year End Report to shareholders for the year of the Atrium merger, Getinge stated that its purchase of Atrium included Atrium's "current liabilities," and Getinge assigned a dollar value on those liabilities.  (Getinge Year End Report 2011, excerpts attached to Orent Affidavit as **Exhibit 10**).  In addition, Getinge purchased and provided Atrium's liability insurance policy that defense counsel has represented as being applicable to the claims asserted in this Court. (Declarations Page for liability insurance policy, attached to Orent Affidavit as **Exhibit 11**).  Importantly, this policy is retroactive to July 1, 2008, meaning that "pre-acquisition" C-Qur claims are expressly covered by a liability insurance policy paid for and provided by Getinge.[26]

The civil lawsuit filed in the Delaware Court of Chancery by Getinge against Atrium's former CEO and principal shareholder, Steve Herweck, establishes Getinge's assumption of Atrium's pre-acquisition liabilities. *See,* **Exhibit 6 of Orent Affidavit**.  In the *Herweck* case, Getinge sought indemnification against Atrium's former CEO/principal shareholder for

---

[25] While facts proffered by defendant are considered, they are considered only to the extent they are not disputed.  *Mass. Sch. Of Law at Andover, Inc.*, 142 F.3d at 34.  Here, the CFO's Declaration is, at best, a disputed fact.

[26] This purchase of liability insurance for Atrium not only evidences Getinge's assumption of Atrium's liabilities, but also Getinge's alter ego liability (and, consequently, alter ego jurisdiction). *Najran Co. for Gen. Contracting and Trading v. Fleetwood Enterprises, Inc.*, 659 F.Supp. 1081, 1088-92 (S.D.Ga. 1986) (Factors relevant to parent's alter ego liability for subsidiary include whether the parent provides insurance coverage to subsidiary and whether same policy covers parent and subsidiary).

numerous claims asserted against Atrium after the merger, but which allegedly arose from pre-merger conduct. These claims included multiple patent violations by Atrium, product liability claims (including hernia mesh claims) against Atrium, an FDA investigation relating to alleged regulatory violations by Atrium, and even criminal proceedings against Atrium.[27] The *Herweck* complaint discloses that Getinge not only investigated and defended each of these claims, but Getinge itself also paid to settle or resolve many of the claims, which indicates that Getinge assumed the pre-acquisition liabilities of Atrium. Getinge's 2016 Year-End Report addressed the consent decree entered with the Government to resolve the Atrium FDA violations, stating that Getinge had committed over 900 million Swedish Krona (or over 100 million U.S. Dollars) to remedy the Atrium FDA violations. (2016 Getinge Year-End Report, excerpts attached to Orent Affidavit as **Exhibit 13**). Furthermore, Getinge also settled multiple False Claims Act and related violations brought on behalf of a former Atrium employee. (Getinge 2015 Annual Report, excerpts attached to Orent Affidavit as **Exhibit 14**).

The facts reflect that Getinge has insured against, defended and paid to resolve multiple claims against Atrium, including other pre-acquisition product liability claims, and various other actions arising from Atrium's pre-acquisition malfeasance. This is prima facie evidence that Getinge assumed Atrium's liabilities and, therefore, Getinge is subject to personal jurisdiction.

    ii.    <u>Getinge is subject to personal jurisdiction in these MDL constituent actions based on the jurisdictional contacts and conduct of its agents and alter egos, Atrium and/or Maquet.</u>

---

[27] The FDA investigation addressed in *Herweck* resulted in an action filed in the U.S. District Court for the District of New Hampshire on behalf of the United States against Atrium and naming several Maquet defendants and two Maquet officers. The allegations involved multiple violations committed at Atrium facilities, and resulted in a Consent Decree, under which Getinge paid $6 million and made various assurances to the Government regarding corrections of the numerous violations alleged by Atrium. *U.S. v. Atrium Med. Corp., et al.*, Case No. 1:15-cv-00041-SM, Dkt. No. 5 (D.N.H.) (attached to Orent Affidavit, as **Exhibit 12**).

As discussed by the Fifth Circuit in the context of another product liability MDL, the United States Supreme Court has "embrace[d] the significance of a principal-agent relationship to the specific-jurisdiction analysis." *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 753 F.3d 521, 531-32 (5th Cir.2014) (*citing Daimler AG v. Bauman*, 134 S.Ct. 746 (2014)). Our Supreme Court recognized, in *Bauman,* that "a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there…." *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 753 F.3d at 531 (quoting *Bauman* at 759 n. 13). Furthermore, where the parent corporation is not simply a passive investor, and the subsidiary carries on business at the behest of the parent, there is no basis for distinguishing between the business of the parent and the business of the subsidiary. *See In re Hydroxycut Mktg. & Sales Practices Litig.*, 810 F.Supp.2d 1100, 1117-1118 (S.D. Cal. 2011) (examining the difference between a true holding company and an agency relationship); *see also, Bellomo v. Pennsylvania Life Co.,* 488 F.Supp. 744, 746 (S.D.N.Y. 1980). As this Court has noted: "[t]he key question is not whether an agency relationship technically exists under state law, but whether a sufficient relationship exists to attribute the agent's acts to the principal under the Due Process Clause." *New Eng. College v. Drew Univ.*, 2009 U.S. Dist. LEXIS 98813, 2009 D.N.H. 158, *12 (Oct. 23, 2009) (citing *Jet Wine & Spirits, Inc. v. Bacardi & Co., Ltd.*, 298 F.3d 1, 7 (1st Cir. 2002)).

Similarly, if a subsidiary is an alter-ego of its parent, then the parent can be subject to jurisdiction based on the subsidiary's contacts. As observed in *Patin v. Thoroughbred Power Boats, Inc.*, "federal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over…a corporation that would not ordinarily be subject to personal jurisdiction in that court if the…corporation is an alter ego or a successor

of a corporation that would be subject to personal jurisdiction in that court." 294 F.3d 640, 653

(5th Cir.2003). In *In re Lyondell Chemical Co.*, the court recognized as follows:

> Under the federal law governing the exercise of in personam jurisdiction, if…one corporation [is] the alter ego of another, the Court may 'pierce the corporate veil' jurisdictionally and attribute 'contacts' accordingly. It is well established that exercise of personal jurisdiction over an alter ego corporation does not offend due process…. [A] plaintiff demonstrates that an entity is the alter ego of another entity for jurisdictional purposes when one entity "exerts greater than normal control" over the other or one entity is merely an empty shell. A plaintiff need not show that the allegedly "sham" corporate structure laid out in a complaint was used for an evil purpose, but must demonstrate that "it would be unfair under the circumstances not to disregard the corporate form."

543 B.R. 127, 141-42 (Bankr. S.D.N.Y.2016)(internal citations omitted). *See also*, *MSA Prods., Inc. v. Nifty Home Prods., Inc.*, 2014 WL 197881, *3 (D.N.J.2014) ("A subsidiary is an alter ego of its parent when it is 'so dominated…that it has no separate existence.'… If a subsidiary is the alter ego of a parent company, and if the Court has personal jurisdiction over the subsidiary company, then the Court also has personal jurisdiction over the parent company."); *Southern New England Tel. Co. v. Global NAPs, Inc.*, 624 F.3d 123, 139 (2d Cir.2010) ("Under federal common law,…[the plaintiff] need only demonstrate that it would be unfair under the circumstances to disregard the corporate form" to establish alter ego jurisdiction).[28]

Finally, "it should be noted that the alter ego test for attribution of contacts, …personal jurisdiction, is less stringent than that for liability." *Stuart v. Spademan*, 772 F.2d 1185, 1198, (5th Cir. Tex. Oct. 7, 1985). *See also, Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981).

The facts available to Plaintiffs demonstrate that Atrium is, at best, an agent and alter ego of Getinge, if not an asset-less shell. Following the Atrium merger, the Defendants in this MDL

---

[28] Getinge's briefing inaccurately suggests that Plaintiffs have not sufficiently pled "injustice." (Dkt. No. 76-1, p. 23 n. 15). The Master Complaint specifically alleges that Atrium is being or has been phased out of existence, and that Atrium's assets and capital are subject to Getinge's control, that Atrium is undercapitalized and that failure to disregard Atrium's alleged corporate form would result in the inequitable and unjust result that Plaintiffs may be unable to satisfy any judgment obtained against Atrium." (Dkt. No. 53, ¶¶ 13-14). As recognized in *Southern New England Tel. Co.*, the requirement of pleading "improper use of corporate form" is "easily satisfied by the allegation that [the parent] structures [its subsidiaries] such that those companies that incur the liabilities are also those without assets to satisfy them." 624 F.3d at 139.

collectively represented themselves to the consuming public as a single entity.[29]  By way of example, Defendants represent to the public that Atrium is "part of 'Maquet Getinge Group.'" *See* http://www.atriummed.com (stating that "Atrium is now part of Maquet Getinge Group") (last visited July 3, 2017); http://www.atriummed.com/News/atriumnews.asp?articleid=60&zoneid=1 (press release detailing acquisition of Atrium by Maquet Getinge Group) (last visited July 3, 2017). (Dkt. No. 53, ¶¶ 10, 11).

Getinge even admits that it holds itself out as an umbrella corporation, essentially conducting its business through its captive subsidiaries—using one brand name, one company logo, and one graphic identity.  (Getinge Annual Report 2016, attached to Orent Affidavit as **Exhibit 15**, at 12) ("From multiple to one brand. … The result is that **Getinge is now unifying all former brands under the Getinge name** – with a new company logo and graphic identity … for example Maquet, they will be transformed.") (emphasis added). The use of a common "group" logo and use of Atrium's trademarks in group marketing efforts provides further evidence of an alter ego relationship.

Additionally, the fact that Getinge operates a website advertising C-Qur is proof that it is not a disinterested investor without involvement in its subsidiaries' activities.  *See e.g. In re Hydroxycut*, 810 F.Supp.2d at 1119 (finding parent was not a disinterested investor, noting that it operated a website advertising the product of its subsidiary).  Tellingly, Atrium admits in its Master Answer that **Atrium operates as a division or business unit of Getinge.** (Dkt. No. 74, ¶ 7) (emphasis added). *See*, *Worldwide Carriers, Ltd. v. Aris S.S. Co.*, 301 F.Supp. 64 (S.D.N.Y. 1968) (In veil piercing analysis, courts consider whether the parent describes the subsidiary as a

---

[29] Similarly, in this litigation, counsel has repeatedly and consistently referred to themselves as "defendants" without specifying each individual entity. *See supra,* §III(a), at 5-6.

mere department or division, or its business is referred to as the parent's own); *see also*, *In re Latex Gloves Prods. Liab. Litig.*, 2001 WL 964105, *5 (E.D.Pa.2001) (evidence that parent and subsidiaries held themselves out to public as a single departmentalized entity, and use by related entities of same corporate logo, supported finding of alter ego); *see also*, *In re Chocolate Confectionary Antritrust Litig.*, 674 F.Supp.2d 580, 614-15 (M.D.Pa.2009) (vertical integration of parent and subsidiary corporations through business units is evidence of alter ego relationship); *see also*, *Southern New England Tel. Co. v. Global NAPs, Inc.*, 624 F.3d 123, 138-39 (2d Cir.2010) (where complaint alleged that parent owned entities as a single economic unit and dominated and controlled subsidiaries are sufficient to bring parent and related entities within the court's personal jurisdiction).

In the years following the merger, the facts reveal that Getinge has taken over Atrium's corporate existence entirely. (Dkt. No. 53, ¶ 13). As set forth above, Getinge's letter to customers clearly accepted ownership of the C-Qur products and directed customers with questions to contact a Maquet/Getinge representative—not an Atrium representative. **Exhibit 9 to Orent Affidavit**. Additionally, this letter directed customers to the Getinge website ([www.getingegroup.com](www.getingegroup.com)) and listed Getinge's address as being in New Jersey. *Id.* In addition, as noted above, Getinge's website ([www.getinge.com](www.getinge.com)) shows a photograph of a C-Qur device and unambiguously identifies the C-Qur as Getinge's own product. **Exhibit 8 to Orent Affidavit**.

Similarly, the Maquet website "Contact" page directs customers to contact "Vascular Systems (**formerly Atrium Medical**)" and provides a "VSpurchaseorders@getinge.com" e-mail address as the appropriate contact. ([www.maquet.com](www.maquet.com) "Contact" page print-out, attached to

Orent Affidavit as **Exhibit 16**)) (last viewed 1/30/17).[30]  Indeed, in a series of Maquet Getinge brochures regarding the C-Qur family of products at issue here, Maquet and Getinge consistently refer customers to the following:

Vascular Systems Headquarters
**MAQUET Vascular Systems**
**formerly Atrium Medical Corporation**
5 Wentworth Drive
Hudson, NH 03051

(*See, e.g.*, Maquet/Getinge Group C-Qur brochure, attached to Orent Affidavit as **Exhibit 17**).[31]

As shown above, the facts of this case go beyond merely an alter ego relationship where a parent directs and controls a subsidiary.  Getinge's publicly-available documents and statements to shareholders and customers give rise to the reasonable inference (if not the inevitable conclusion), that Atrium is being (or else has already been) phased out of existence.  Atrium is consistently referred to as a "former" company (with Getinge and/or Maquet replacing Atrium).  Getinge and Maquet openly and unequivocally represent to customers that the C-Qur products are theirs (and not "former" company Atrium's), and Getinge and Maquet advertise, promote and offer the C-Qur products for sale.  Getinge and Maquet refer to Atrium's pre-acquisition business address as the current address for the Getinge's "Vascular Systems Headquarters…formerly Atrium Medical Corporation."  Such facts give rise to the realistic concern that, due to Getinge's actions, Atrium may exist in name only.

---

[30] Based on this e-mail address ("VSpurchaseorders@getinge.com"), it is only reasonable to assume that this would be the e-mail address customers would send purchase orders or related inquiries for "Vascular Systems" products, which include the C-Qur devices.  Once again, the averments in Getinge's supporting Declaration are contradicted by the facts as it seems customers can purchase C-Qur via a Getinge based email address.

[31] Getinge produced similar brochures for other C-Qur family products, each of which contain the same "*formerly Atrium Medical Corporation*" language.  Getinge also consistently refers in these brochures to Atrium's pre-acquisition business address (5 Wentworth Dr., Hudson, New Hampshire) as its own.

Even to the extent Atrium is alleged to maintain some nominal legal existence, Getinge could seek to avoid liability altogether with the stroke of a pen by simply writing Atrium out of existence. These MDL plaintiffs would be left without a remedy, all while Getinge enjoys the fruits of operating and running the former Atrium, promoting and selling Atrium's former products to Atrium's former customers, and calling the products and facilities their own. This would reward artifice and foster injustice; this sort of patently inequitable result should not be allowed. *See, e.g.*, *Avanti Hearth Prods., LLC v. Janifast, Inc.*, 2010 WL 3081371, *5 (W.D.N.C.2010) ("Such a dismissal [for personal jurisdiction] may perpetrate the injustice of allowing [the defendant corporation] to limit its potential liability by claiming insolvency and/or by moving its assets to one of its alleged alter egos…. Alter ego theory aims to prevent such injustices…."); *MSA Prods., Inc. v. Nifty Home Prods., Inc.*, 2014 WL 197881, *3 (D.N.J.2014) ("hallmarks" of abuse of corporate form include "undercapitalization of the subsidiary rendering it judgment-proof."); *Southern New England Tel. Co.*, *supra* at 139 (pleading "improper use of corporate form" is "easily satisfied by the allegation that [the parent] structures [its subsidiaries] such that those companies that incur the liabilities are also those without assets to satisfy them.").

As with the alter ego analysis, "[a] core concern in … personal jurisdiction cases is fairness." *Bristol Myers Squibb Co. v. Sup. Ct. of CA, et al*, 582 U.S. ___ (2017) (Sotomayor, J., dissenting). It would be patently unfair to dismiss Getinge from this MDL, given the facts supporting alter-ego jurisdiction. Accordingly, Getinge's Motion should be denied because it is subject to personal jurisdiction based on the imputed contacts of its alter ego, Atrium.

## IV.  CONCLUSION

Plaintiffs respectfully submit that the Court should deny Getinge's Motion to Dismiss outright because Getinge waived personal jurisdiction. Alternatively, Plaintiffs submit that Getinge's Motion should be denied because Plaintiffs have made a prima facie showing of

personal jurisdiction. If the Court does not deny Getinge's motion, however, the fact-intensive issues regarding Getinge's personal jurisdiction under the assumption of liability, agency or alter ego theories, should only be decided after Plaintiffs have had the opportunity to discover all relevant facts bearing on these issues.

Dated: July 5, 2017                              Respectfully submitted,

                                                  **UPTON & HATFIELD LLP**

                                                  By: */s/ Susan Aileen Lowry*
                                                  Susan Aileen Lowry (NHBA 18955)
                                                  10 Centre Street, P.O. Box 1090
                                                  Concord, NH 03302-1090
                                                  (603) 224-7791
                                                  slowry@uptonhatfield.com

                                                  */s/ Russell F. Hilliard*
                                                  Russell F. Hilliard (NHBA 1159)
                                                  159 Middle Street
                                                  Portsmouth, NH 03801
                                                  (603) 436-7046
                                                  rhilliard@uptonhatfield.com

                                                  **MOTLEY RICE, LLC**
                                                  */s/ Jonathan D. Orent*
                                                  Jonathan D. Orent
                                                  55 Cedar Street, Suite 100
                                                  Providence, RI 02903
                                                  TEL: (401)457-7723
                                                  FAX: (401)457-7708
                                                  jorent@motleyrice.com

                                                  **HOLLIS LAW FIRM, P.A.**
                                                  /s/ *Adam M. Evans*
                                                  Adam M. Evans
                                                  5100 W. 95th St.
                                                  Prairie Village, KS 66207
                                                  (913) 385-5400
                                                  (913) 385-5402 (fax)
                                                  adam@hollislawfirm.com

**GORI, JULIAN & ASSOC. P.C.**
*/s/ D. Todd Mathews*
159 N. Main St.
Edwardsville, IL 62025
(618) 659-9833
(618) 659-9834
Todd@gorijulianlaw.com

**HOLMAN SCHIAVONE, LLC**
/s/ *Anne Schiavone*
Anne Schiavone
4600 Madison Avenue, Suite 810
Kansas City, Missouri 64112
TEL: (816) 283-8738
FAX: (816) 283-8739
aschiavone@hslawllc.com

**BAILEY & GLASSER, LLP**
/s/ *David L. Selby, II*
David L. Selby, II
3000 Riverchase Galleria, Suite 905
Birmingham, Alabama 35244
Tel.: (205) 988-9253
Email: dselby@baileyglasser.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 5, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive service in this action.

*/s/ Russell F. Hilliard*
Russell F. Hilliard (NHBA 1159)