UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

In Re: Atrium Medical Corp. C-Qur Mesh
Products Liability Litigation (MDL No. 2753)

MDL Docket No. 16-md-2753-LM
ALL CASES

**O R D E R**

Atrium Medical Corporation ("Atrium") and Maquet Cardiovascular US Sales, LLC ("Maquet"), two of three defendants in this multi-district litigation ("MDL"), move to dismiss five of seventeen claims asserted against them in plaintiffs' Master Complaint.[1] Plaintiffs object to the motion.

**STANDARD OF REVIEW**

Under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014) (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

---

[1] The third defendant, Getinge AB ("Getinge"), filed a separate motion to dismiss contending that the court lacks personal jurisdiction over it. On November 14, 2017, the court denied that motion without prejudice. See doc. no. 300. Getinge does not join in the instant motion.

# BACKGROUND

Plaintiffs bring claims in individual cases for injuries they allege were caused by hernia repair products made from C-QUR mesh. They further allege that the C-QUR mesh products were developed, manufactured, marketed, and sold by the defendants, Getinge, Atrium, and Maquet.[2] The cases have been consolidated in this court for pretrial proceedings as multi-district litigation.

During the course of the litigation, the court has issued several Case Management Orders, which govern the practices and procedures of the case. Relevant to the instant motion, Case Management Order No. 3 (doc. no. 39) addressed, among other things, discovery and pleadings. The order provides, in relevant part:

> 4.3 **Master Complaint and Answer**. Plaintiffs shall file a Master Long Form Complaint ("Master Complaint") and defendants shall file within 45 days thereafter a Master Answer. The Master Complaint shall lay out the general claims and allegations of plaintiffs, and the Master Answer shall respond and assert defenses. Once approved by the court, the parties shall jointly file a proposed General Phase discovery schedule for the Master Complaint.
>
> 4.4 **Short Form Complaint**. In addition to a Master Complaint, the parties shall jointly file a Short Form Complaint, which refers to and adopts the Master Complaint. Once the Master Complaint is approved, individual plaintiffs will use a Short Form Complaint to initiate their case and to assert the counts of the Master Complaint, as well as any additional causes of action that plaintiff asserts. Individual plaintiffs who have previously filed complaints in this MDL will be ordered to file a Short Form Complaint within 60 days of entry of the Master Complaint. Service of the Short Form Complaint will be deemed effective by emailing a conformed copy of the Short Form Complaint, and if in plaintiff's possession, device tag or other medical record identifying the product as issue in the case, to defendants in accordance with CMO 2.
>
> 4.5 **Defendants' Answer to Short Form Complaint is Stayed.** Defendants' obligation to answer the Short Form Complaints is stayed. Defendants shall acknowledge receipt of the Short Form Complaint by filing an entry of appearance. Defendants' acknowledgment shall constitute a denial of the

---

[2] Atrium and Maquet are wholly-owned subsidiaries of Getinge.

allegations in the Short Form Complaint and an assertion of all defenses included in the defendants' Master Answer.

4.6 **Long Form Complaint.** When an individual case is selected for specific phase discovery, that plaintiff will be ordered to file a full Long Form Complaint specific to that case that will govern that case moving forward. Defendant will answer the Long Form Complaint within the time provided for by the Federal Rules of Civil Procedure.

Doc. no. 39 at ¶¶ 4.3 - 4.6.

On April 14, 2017, plaintiffs filed the Master Complaint, asserting 17 claims against defendants. See doc. no. 53. On June 6, 2017, defendants each filed separate answers to the Master Complaint. See doc. nos. 74, 75 & 77. On that same date, Atrium and Maquet filed the instant motion to dismiss, arguing that certain claims asserted in the Master Complaint should be dismissed pursuant to Rule 12(b)(6).[3]

## DISCUSSION

The Master Complaint asserts 17 causes of action against Defendants: negligence (Count I); strict liability-design defect (Count II); strict liability – manufacturing defect (Count III); strict liability – failure to warn (Count IV); strict liability – defective product (Count V); breach of express warranty (Count VI); breach of implied warranties of merchantability and fitness of purpose (Count VII); fraudulent concealment (Count VIII); constructive fraud (Count IX); discovery rule, tolling, and fraudulent concealment (Count X); negligent misrepresentation (Count XI); intentional infliction of emotional distress (Count XII); violation of consumer protection laws (Count XIII); gross negligence (Count XIV); unjust enrichment (Count XV); loss of consortium (Count XVI); and punitive or enhanced compensatory damages (Count XVII).

---

[3] Although Getinge does not join in the instant motion, the court will refer to Atrium and Maquet jointly as "defendants" when addressing their arguments.

3

Defendants move to dismiss the five "fraud-based" claims in which plaintiffs allege that defendants misrepresented or omitted information concerning dangers of using defendants' mesh products to correct hernias: Counts VIII (Fraudulent Concealment), IX (Constructive Fraud), X (Discovery Rule, Tolling, and Fraudulent Concealment), XI (Negligent Misrepresentation), and XIII (Violation of State Consumer Protection Statutes). Defendants argue that the allegations underlying these fraud-based claims fail to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).

Defendants also argue that even if these claims are sufficiently alleged under Rule 9(b), Count IX (Constructive Fraud) and Count X (Discovery Rule, Tolling, and Fraudulent Concealment) should be dismissed for additional reasons. Defendants contend that with regard to the constructive fraud claim, plaintiffs fail to allege a "special relationship" between themselves and defendants which, defendants assert, is an element of the claim. They also argue that Count X does not assert a cognizable cause of action.

I.  Fraud-Based Claims

Defendants assert, and plaintiffs do not dispute, that the following portions of the Master Complaint represent plaintiffs' factual allegations underlying their fraud-based claims:

> 27. Defendants' C-QUR Mesh was designed, patented, manufactured, labeled, packaged, marketed, sold and distributed by Defendants at all relevant times herein.
>
> 29. Defendants were responsible for the research, design, development, testing, manufacture, production, marketing, packaging, promotion, distribution, and sale of C-QUR Mesh, as well as providing the warnings and instructions concerning the product.
>
> 32. Defendants represented to Plaintiffs and Plaintiffs' physicians that C-QUR Mesh was a safe and effective product for hernia repair and for permanent implantation in humans.

36. Defendants represented the Omega 3 coating would prevent or minimize adhesion and inflammation, and facilitate incorporation of the mesh into the body, but it did not. Instead, the Omega 3 coating prevented adequate incorporation of the mesh into the body causing an intense inflammatory and chronic foreign body response, that resulted in an adverse tissue reaction, including damage to surrounding tissue in the form of sclerotic, granulomatous and/or fibrotic tissue, and improper healing.

51. Upon information and belief, Defendants adjusted the threshold for reporting and recalling the C-QUR mesh due to non-conformities and adverse event reports, resulting in a large number of injurious events, deemed by Defendants to be acceptable, to go unreported.

52. Upon information and belief, Defendants made misleading statements to physicians about potential adverse events and attempted to convince physicians of alternative causes other than the C-QUR Mesh.

53. Upon information and belief, Defendants omitted information regarding potential adverse events in discussions with physicians.

54. Upon information and belief, Defendants "stealth recalled" multiple types of C-QUR Mesh that were experiencing high levels of adverse events by simply halting production of certain types of C-QUR Mesh without notifying consumers or physicians of the recall or high level of adverse events.

55. Upon information and belief, Defendants manipulated, altered, skewed, slanted, misrepresented, and/or falsified pre-clinical and/or clinical studies to bolster the perceived performance of the C-QUR Mesh and/or diminish adverse events.

56. Upon information and belief, Defendants paid doctors, surgeons, physicians, and/or clinicians to promote the C-QUR Mesh, but did not readily disclose this information.

57. Defendants marketed and sold the C-QUR Mesh to the medical community at large and patients through carefully planned, multifaceted marketing campaigns and strategies. These campaigns and strategies include, but are not limited to, aggressive marketing to healthcare providers at medical conferences, hospitals, and private offices, as well as the provision of valuable benefits to healthcare providers. Defendants further utilized documents, patients, brochures, and websites.

58. Defendants have, at all times relevant hereto, provided incomplete, insufficient, and misleading training and information to physicians, in order to increase the number of physicians utilizing C-QUR Mesh, thereby increasing

> sales. This has led to the dissemination of inadequate and misleading information to patients, including Plaintiffs.
>
> 61. Defendants have misrepresented the efficacy and safety of the C-QUR Mesh, through various means and media, actively and intentionally misleading the medical community, patients, and the public at large.
>
> 62. Defendants' C-QUR Meshes continues to be marketed to the medical community and to patients as safe, effective, reliable medical devices, implanted by safe and effective surgical techniques for the treatment of hernia repair and soft tissue repair, and as safer or more effective as compared to the traditional products and procedures, including competing hernia mesh products.
>
> 63. In reliance on Defendants' representation, Plaintiffs' physicians were induced to, and did use, the C-QUR Mesh.
>
> 66. As a direct and proximate result of having the C-QUR Mesh implanted, Plaintiffs have been severely and permanently injured.

Doc. no. 53.

Defendants argue that these factual allegations fall short of the level of detail necessary to plead a viable cause of action sounding in fraud under Rule 9(b). They note that there is no timeframe for when any of the alleged misrepresentations were made, and there are no details as to where, how, or to whom defendants made the alleged misrepresentations. They further point to the fact that many of the allegations are made "upon information or belief," which they argue does not satisfy Rule 9(b).

In response, plaintiffs contend that the Master Complaint is merely an "administrative tool" that should not be subject to a motion to dismiss under Rule 12(b)(6). They add, in the alternative, that even if the Master Complaint is subject to a motion to dismiss, plaintiffs' allegations are sufficient to satisfy Rule 9(b).

"Like snowflakes, no two MDLs are exactly alike and, no doubt, whether to require the filing of a consolidated complaint and, if so, whether to treat such a complaint as 'administrative' or 'superseding' will depend on the particulars of a given MDL." In re General Motors LLC

Ignition Switch Litig., No. 14-MD-2543 (JMF), 2015 WL 3619584, at *8 (S.D.N.Y. June 10, 2015). "In many cases, the master complaint is not meant to be a pleading with legal effect but only an administrative summary of the claims brought by all the plaintiffs. When plaintiffs file a master complaint of this variety, each individual complaint retains its separate legal existence." In re Refrigerant Compressors Antitrust Litig., 731 F.3d 586, 590 (6th Cir. 2013) (citing cases). "But, in other cases, the court and the parties go further. They treat the master complaint as an operative pleading that supersedes the individual complaints" and it is "examined for its sufficiency when the defendants file a motion to dismiss." Id. (citing cases).

The parties here dispute whether the Master Complaint was intended to be merely administrative. Plaintiffs note that they state in the Master Complaint itself that they "bring this Master Long form Complaint as an <u>administrative device</u> to set forth potential claims individual Plaintiffs may assert against Defendants in this litigation." Doc. no. 53 at 1 (emphasis added). They argue that because Case Management Order No. 3 contemplates individual plaintiffs subsequently filing a Short Form Complaint and a Long Form Complaint specific to his or her case, the Master Complaint was not intended to be anything more than an administrative tool and should not be subject to a Rule 12(b)(6) motion.

In response, defendants contend that the parties specifically agreed that the Master Complaint would be subject to Rule 12 motions. They quote the following exchange the parties had with the court at the Initial Case Management Conference on February 24, 2017:

> MS. AYTCH: Your Honor, we just kind of wanted to speak more to the pleadings stage and the pleadings form. The way we understand it, there will be a master long form complaint and we will get to respond to that. Based upon some of the complaints that have come through there are causes of action asserted that we don't believe are viable and that we would like to challenge at that stage. So as discovery progresses we think that discovery should of course be narrowed to the claims that remain within whatever the master long form complaint is.

7

> THE COURT: I totally agree with that. Is there any disagreement on this side?
>
> MR. BONSIGNORE:[4] No, your Honor. We were just discussing the timetable.
>
> THE COURT: Okay. All right. Well, I think the proposal generally meets with my approval, that you try to narrow the scope of everything so that you're not doing discovery on some claim that there's a big dispute about whether or not it even should be in the master complaint going forward.

February 24, 2017, Tr. at 91.

Defendants also note that Case Management Order No. 3 specifies that after plaintiffs file the Master Complaint, each individual plaintiff, even those who had previously filed a complaint in a transferor court, is required to file a Short Form Complaint. Defendants contend that this requirement shows that the Master Complaint was meant to be an operative and superseding document, rather than a mere administrative tool.

The court agrees with defendants that the Master Complaint in this case was meant to be more than a mere administrative tool. As defendants note, the Master Complaint supersedes any prior individual complaints, and both the court and the parties contemplated at the outset of the case that the Master Complaint would be subject to motions to dismiss. Therefore, the Master Complaint is not immune from a motion to dismiss under Rule 12(b)(6).

The Master Complaint, however, cannot be considered in isolation. A recent order issued in an MDL case in the District of Massachusetts granting the defendants' motion to dismiss a Master Complaint is instructive. In In re Zofran (Ondansetron) Products Liability Litigation, No. 1:15-md-2657-FDS, 2017 WL 1458193 (D. Mass. Apr. 24, 2017), the court analyzed the applicability of Rule 9(b) in the context of an MDL proceeding that uses a Master Complaint. The court held:

---

[4] At the time of the Initial Case Management Conference, Attorney Robert Bonsignore was Temporary Lead Counsel for plaintiffs.

8

> It is true that this case, like most MDL proceedings, employs the device of a master complaint, supplemented by individual short-form complaints that adopt the master complaint in whole or in part. It is also true that a master complaint could not possibly be expected to include every case-specific detail, such as a particular misleading statement made by a particular sales representative to the physician of an individual plaintiff. But the "complaint" in this proceeding is not a single document. The master complaint has no legal effect, standing alone; it has an effect only when it is adopted by a plaintiff through the filing of an individual complaint. In other words, the complaint in each action in this proceeding consists of the master complaint and the individual short-form complaint, taken together. See MDL Order No. 14 (Docket No. 243) (ordering that short-form complaints together with the applicable master complaint are "legally operative and binding as to that plaintiff"). Accordingly, any particularized allegation of fraud applicable only as to an individual—for example, a claim that a specific sales representative made a misrepresentation to a specific physician, who then prescribed the product to the plaintiff mother— should normally be set forth in the individual short-form complaint.

Id. at *6 (internal citations omitted). In other words, the court held that although a Master Complaint may be subject to a Rule 12(b)(6) motion for failure to plead claim with sufficient specificity under Rule 9(b), the Master Complaint must be taken together with any individual complaints which set forth more particularized factual allegations.

Unlike the relevant Case Management Order in In re Zofran, however, Case Management Order No. 3 does not provide that the Short Form Complaints "complete the pleadings," as defendants suggest. Doc. no. 108 at 4 n.4. Instead, the Short Form Complaint "refers to and adopts the Master Complaint" and asserts "any additional causes of action that plaintiff asserts." Doc. no. 39 at ¶ 4.4. Neither Case Management Order No. 3, nor the Short Form Complaint itself (which was jointly proposed by the parties), see doc. no. 83, allows or provides for individual plaintiffs to include particularized allegations of fraud. Such allegations are contemplated for a Long Form Complaint, however, which will be "specific to" individual cases and "will govern that case moving forward." Doc. no. 39 at ¶ 4.6. The Long Form Complaints, however, are only filed when an individual case is selected for specific phase discovery. See id.

In other words, unlike In re Zofran, the pleadings in this case are not yet complete such that a motion to dismiss based on Rule 9(b) would be appropriate. Therefore, defendants' motion to dismiss based on Rule 9(b) is premature, as it "would require case-specific rulings to determine the sufficiency of each individual plaintiff's factual allegations." In re Zimmer Nexgen Knee Implant Prod. Liab. Litig., No. 11 C 5468, 2012 WL 3582708, at *3 (N.D. Ill. Aug. 16, 2012) (citing multi-district litigation cases that "have refused to entertain" motions to dismiss that challenge the sufficiency of specific factual allegations).[5] For that reason, defendants' motion to dismiss the fraud-based claims for failure to plead with particularity is denied without prejudice to refiling at the appropriate time.[6]

II.     Constructive Fraud

Defendants seek dismissal of plaintiffs' constructive fraud claim, Count IX, noting that the claim requires some sort of fiduciary or "special" relationship between the parties. Defendants contend that plaintiffs fail to allege such a relationship and, therefore, the claim should be dismissed.

Plaintiffs concede that they do not allege the existence of a fiduciary or special

---

[5] As discussed further below, the fact that the pleadings do not yet include case-specific allegations does not prevent defendants from moving to dismiss a claim "that raises common issues to all plaintiffs," such that the resolution of the motion does not depend on case-specific allegations. In re Zimmer, 2012 WL 3582708, at *4 (citing cases).

[6] For similar reasons, defendants' assertion that certain allegations in the Master Complaint made "upon information and belief" are insufficient to satisfy Rule 9(b) is premature. The court notes, however, that allegations of fraud based on information and belief are sufficient to satisfy Rule 9(b) in certain circumstances. See, e.g., Town of Wolfeboro v. Wright-Pierce, No. 12-CV-130-JD, 2013 WL 4500676, at *6 (D.N.H. Aug. 20, 2013) (noting that under Rule 9(b), allegations of fraud may be based upon information and belief so long as the complaint also alleges the factual basis for the belief).

relationship between themselves and defendants. They assert, however, that state law differs regarding the requirements of a valid claim for constructive fraud, and that not every state requires the existence of a fiduciary or other special relationship. For example, plaintiffs point to two states—Montana and New Mexico—which they assert do not require a fiduciary or special relationship for a valid claim of constructive fraud.

In addition, plaintiffs note that they allege defendants had "unique and superior knowledge" regarding the defective nature of their products, and that they took "advantage of their dominant position of knowledge" with regard to plaintiffs and their healthcare providers. Doc. no. 53 at ¶¶ 171, 175. Plaintiffs assert that at least two states—Arkansas and Indiana—recognize that a party's superior knowledge over another can be sufficient to create a duty that gives rise to a claim for constructive fraud. Plaintiffs argue that because defendants have failed to establish that plaintiffs would be unable to recover for constructive fraud under every state's law, the motion to dismiss must be denied.

In response, defendants note that neither Montana nor New Mexico is represented in this litigation and that, regardless, both states require some sort of duty between a defendant and a plaintiff. As plaintiffs note, however, defendants do not address Indiana law, which is represented in this litigation.[7]

As discussed above, where "defendants bring a motion to dismiss that raises issues common to all plaintiffs . . . the administrative nature of a Master Complaint does not necessarily preclude 12(b)(6) motion practice." In re Zimmer, 2012 WL 3582708, at *3. At the same time, however, "the transferee court typically does not rule on cumbersome, case-specific legal

---

[7] Defendants also do not address Arkansas law, which is represented in this litigation. See Terry McLain, et al. v. Atrium Medical Corp., et al., 17-cv-02770-LM (D.N.H. Dec. 5, 2016).

11

issues." In re Nuvaring Prods. Liab. Litig., No. 4:08MD1964 RWS, 2009 WL 4825170, at *2 (E.D. Mo. Dec. 11, 2009) (quoting In re Phenylpropanolamine Prods. Liab. Litig., No. MDL 1407, 2004 WL 2034587, at *2 (W.D. Wash. Sept. 3, 2004)).

Based on the parties' filings, it appears that at least one jurisdiction represented in this litigation—Indiana[8]—does not necessarily require a fiduciary or special relationship to state a claim for constructive fraud. Defendants have therefore failed to show that the portion of their motion to dismiss the constructive fraud claim "raises issues common to all plaintiffs." For that reason, their motion to dismiss the constructive fraud claim is denied without prejudice.[9]

III.  Discovery Rule, Tolling, and Fraudulent Concealment

Defendants seek dismissal of Count X, which is titled "Discovery Rule, Tolling, and Fraudulent Concealment." They assert that "discovery rule" and "tolling" are not actionable legal theories. They further assert that plaintiffs have already alleged a claim for fraudulent concealment in Count VIII and, therefore, to the extent Count X is based on an actionable legal theory, it is duplicative.

Plaintiffs assert that Count X adds to the context of their complaint, but they "concede that, standing alone, a provision allowing tolling is not a separate claim entitling Plaintiffs to

---

[8] See Richard Lady v. Atrium Medical Corp., et al., 16-cv-02759-LM (D.N.H. Nov. 14, 2016).

[9] Plaintiffs do not appear to dispute that the vast majority of jurisdictions around the country, whether currently represented in this litigation or not, require allegations of a special relationship in order to state a constructive fraud claim. The viability of plaintiffs' constructive fraud claim, however, must be addressed in the context of the legal standard applicable to specific plaintiffs' claims. That will occur at a later time.

relief." Doc. no. 93-1 at 23. They further argue that defendants are not prejudiced by the inclusion of Count X.

The parties agree that Count X does not assert a viable cause of action and, to the extent it could be construed to do so, it is duplicative of Count VIII.[10] Therefore, defendants' motion to dismiss is granted as to Count X.

## CONCLUSION

For the foregoing reasons, Atrium and Maquet's motion to dismiss (doc. no. 79) is granted as to Count X and is otherwise denied without prejudice.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

January 8, 2018

cc: All Counsel of Record

---

[10] Plaintiffs essentially concede that Count X was included in the Master Complaint to preemptively address defendants' anticipated assertion of a statute of limitations defense, which defendants indeed asserted in their Master Answer. See doc. no. 93-1 at 24 n.21. Although defendants' motion to dismiss Count X is granted, the factual allegations underlying Count X remain in the complaint.

13