**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| **IN RE: ATRIUM MEDICAL CORP. C-QUR MESH PRODUCTS LIABILITY LITIGATION** | Master File No. 1:16-md-02753-LM<br>MDL No. 2753<br><br>**LANDYA B. MCCAFFERTY**<br>**U.S. DISTRICT JUDGE** |
| **THIS DOCUMENT RELATES TO:**<br>**ALL CASES** | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR OBJECTION TO DEFENDANTS' MOTION AND BRIEF REGARDING PRIORITY OF QUESTIONING AT DEPOSITIONS OF PLAINTIFFS' TREATING PHYSICIANS**

### I.   INTRODUCTION

Defendants seek to overturn this Court's informal dispute resolution with respect to priority questioning during depositions of treating physicians. On January 17, 2019, the parties submitted letter briefs pursuant to Case Management Order No. 3. *See* Doc. Nos. 1073-3, 1073-4. After hearing arguments, this Court concluded, "plaintiffs' counsel shall question plaintiffs' treating physicians first during physician depositions." Procedural Order, Doc. No. 1080, at ¶4 (Feb. 15, 2019). *See also*, *In re: Atrium Medical Corp. C-Qur Mesh Products Liab. Litig.,* No. 16-md-02753-LM, Transcript of Status Conference, Doc. No. 1086, at 22:7-15 (D.N.H. Feb. 14, 2019) ("February 14, 2019 Transcript"). Unsatisfied with the outcome, Defendants filed its Motion and Brief Regarding the Priority of Questioning at Depositions of Treating Physicians on February 25, 2019. Doc. No. 1084 ("Defendants' Motion" or "Def. Mem."). Defendants seek to question first during all depositions of Plaintiffs' treating physicians or, in the alternative, Defendants seek to question first during depositions of treating physicians in Plaintiffs' bellwether selections. *Id.* For the reasons stated herein and during the February 14, 2019 status conference, Plaintiffs respectfully request that Defendants' Motion be denied in its entirety.

1

## II. STANDARD OF REVIEW

The Federal Rules authorize the court to order the sequence of discovery upon motion for the parties' and witness' convenience and in the interests of justice. Fed. R. Civ. P. 26(d). Such an order is at the discretion of the trial judge. *See e.g.*, *Manske v. UPS Cartage Servs.*, 789 F. Supp. 2d 213, 216 (1st Cir. 2011). Indeed, district courts enjoy broad discretion in managing pre-trial discovery. *See e.g., Serrano-Perez v. FMC Corp.*, 985 F.2d 625, 628 (1st Cir. 1993).

## III. ARGUMENT

### A. Defendants' argument falsely presumes an unfair advantage.

Defendants seek priority questioning in depositions of treating physicians because of a supposed "inherent imbalance and unfairness" that arises from so-called "*ex parte*"[1] contacts with treating physicians. Def. Mem., at 5. As other courts have recognized, however, "[t]here is nothing uneven or unfair about [pre-deposition communications]." *In re: Benicar (Olmesartan) Products Liability Litig.*, 2016 WL 137 0998, * 4 (D.N.J. Apr. 6, 2016). *See also, In re: Testosterone Replacement Therapy Products Liability Litigation*, 167 F.Supp.3d 936, 939 (N.D.Ill. Mar. 7, 2016) ("There is nothing un-evenhanded about this approach") Rather, Defendants' argument of inequity is based on false presumptions and an unfounded fear of woodshedding.[2]

As an initial matter, Defendants' argument presumes that the treating physicians will speak with Plaintiffs' counsel in every case. The reality is that treating physicians often do not—some are too busy and some are not eager to speak with attorneys. Yet, Defendants seek priority

---

[1] "The term '*ex parte* contact' may literally be correct, but it carries a pejorative connotation that is unfairly applied to activity that, when done appropriately, is part of what good trial lawyers do, and should do, when representing their clients." *In re: Testosterone Replacement Therapy Products Liability Litigation*, 167 F.Supp.3d 936, 937 (N.D.Ill. Mar. 7, 2016).

[2] "'Woodshedding' refers to the process of impermissibly coaching a witness or unfairly prejudicing a witness during *ex parte* communications with counsel. [But t]he word's more colloquial meaning suggests taking a naughty child out of earshot so that he or she may be scolded or physically reprimanded." *In re: Xarelto (Rivaroxaban) Products Liab. Litig.*, MDL No. 2592, 2016 U.S. Dist. LEXIS 30822, at *16, 2016 WL 915288, at *6 (E.D.La. Mar. 9, 2016).

2

questioning in every single case or, in the alternative, in all of Plaintiffs' bellwether picks—regardless of whether Plaintiffs' counsel actually speaks with the treating physician prior to the deposition. It is hard to fathom what advantage Plaintiffs gain in cases where pre-deposition communications do not occur. Simply having the opportunity to engage in pre-deposition communication does not warrant priority questioning by Defendants. Thus, granting Defendants' Motion would clearly provide Defendants with an unfair advantage in cases where Plaintiffs' counsel does not engage in any significant communication with the treating doctor.

More troubling, however, is that Defendants' argument presupposes that Plaintiffs' conversations with treating doctors will result in Plaintiffs' counsel unduly influencing or impermissibly coaching physicians. *See e.g.* February 14, 2019 Transcript, at 12:7-13:8 (insinuating that testimony could be "rehearsed"); *see also*, Def. Mem., at 4 (indicating that Plaintiffs have the ability to "streamline their examination"). Putting aside this unfounded and disparaging assumption, Defendants fail to recognize that physicians are not "cowed, reprimanded children" but are "learned professionals who have devoted themselves to the sciences. … And to suggest that highly trained physicians would be unduly influenced by the comments of Plaintiffs' counsel fails to account for the healthy skepticism which exists between the members of these professions." *In re: Xarelto (Rivaroxaban) Products Liab. Litig.*, MDL No. 2592, 2016 U.S. Dist. LEXIS 30822, at *16, 2016 WL 915288, at *6 (E.D.La. Mar. 9, 2016). Defendants baselessly assume that Plaintiffs' counsel will easily sway physicians from beliefs established following years of education and experience, and bias their sworn testimony. As the District of New Jersey aptly stated: "[t]he problem with defendants' argument is that there is no credible evidence to support it [and d]efendants' concern that plaintiffs' counsel may improperly influence plaintiffs' doctors is overblown." *In re: Benicar*, 2016 WL 1370998, at * 3.

3

In fact, Defendants admittedly ground their argument in the "potential" for harm or impropriety—and do not allege any impropriety or harm has occurred in these cases. February 14, 2019 Transcript, at 12:7-9 ("Well, here's how I think it potentially could harm, and I can only tell you from my experience, generally."). Defense counsel acknowledged that he didn't believe Plaintiffs' counsel in this case would do so—but that some other, unnamed counsel, in other cases, have "stepped over the line[.]" *Id.*, at 13:1-3 ("And some counsel I think, not these good counsel on the phone, but in my experience have stepped over the line."). Despite citing a handful of cases in which depositions have occurred following pre-deposition contact with Plaintiffs' counsel, Defendants have not cited a single instance of improper influence or prejudice resulting from such communication. *See* Def. Mem., at 2-3. As there is no evidence, in this case, that Plaintiffs' counsel has engaged in such conduct, Defendants' Motion seeks to create a solution to a problem that does not exist.

Other courts have also rejected arguments grounded in the hypothetical fear that *ex parte* communications with treating physicians result in woodshedding. *See e.g. In re: Benicar*, 2016 WL 1370998, at *3-4 ("Defendants' concern that plaintiffs' counsel may improperly influence plaintiffs' doctors is overblown. … Further, despite the fact that this *ex parte* issue has been circulating for years, defendants do not cite a single instance [of improper influence]."); *see also, In re: Testosterone*, 167 F.Supp.3d at 939 (rejecting defendants' argument that unlimited *ex parte* contact with treating physicians will result in woodshedding); *see also*, *In re Kugel Mesh Hernia Repair Patch Litigation*, 1:07-md-01842-WES-LDA, Document 3716, at 3 (D.R.I. Jan. 12, 2012) (after four years of unregulated *ex parte* contact by plaintiffs' counsel, defendants did not identify any substantial prejudice or injustice resulting from the challenged contacts) (attached as Exhibit A); *see also*, *In re Ortho Evra Products Liab. Litig.*, 2010 WL 320064 *2 (N.D. Ohio Jan. 20,

2010) ("The Court will assume that capable and mature attorneys such as Plaintiffs' counsel will not act in a manner which would result in woodshedding or gaining an unfair advantage by ambush when engaged in *ex parte* contact with treating physicians.").

Further, in examining the potential for woodshedding in *ex parte* contacts with treating physicians, other courts have indicated that the ethical rules provide sufficient remedies for such behavior. *See e.g.*, *In re: Testosterone*, 167 F.Supp.3d at 937 ("the law deals with such abuses in other ways: the opposing party may …, if the circumstances warrant, seek sanctions."); *see also*, *In re: Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, MDL 2327, 2015 U.S. Dist. LEXIS 139926, *3287 (S.D. W. Va., Oct. 13, 2015) ("Moreover, attorneys, as officers of the court, have ethical rules that they must follow, which include a prohibition on improperly influencing witnesses. The court must presume that attorneys will abide by their ethical obligations; when they do not, there are sanctions that can be imposed to address the specific malfeasance."); *see also*, *In re: Zoloft (Sertraline Hydrochloride) Prods. Litig.*, MDL 2342, 2013 U.S. Dist. LEXIS 190081, *13 (E.D. Pa., June 13, 2013) (stating that plaintiffs' counsel had not "been shown to be anything other than honorable and respectful of ethical and legal restrictions on what they may do" and that the issue could be reconsidered if developments showed that restrictions on *ex parte* contacts should be imposed).

### B. Safeguards are already in place to cure any alleged unfairness and allow Defendants access to information.

Defendants request priority questioning in depositions because they lack "equal access to these essential fact witnesses" and they will somehow be unable to explore the knowledge of the deponent if they go second. Def. Mem., at 2-3. Defendants fail to recognize that a variety of safeguards is already in place that allow them adequate access to information and cure any supposed inequity posed by pre-deposition communication.

5

First, Defendants are entitled to Plaintiffs' medical records, as well as the court-ordered discovery forms setting forth each Plaintiff's detailed history. *See e.g.*, Case Management Orders 3G and 3H, Doc. Nos. 638, 873 (requiring a copy of medical records, a Plaintiff Profile Form, and a Plaintiff Fact Sheet). Second, Defendants undoubtedly have access to information (and documentation) regarding what its representatives told the treating physicians about its hernia mesh products. Third, Plaintiffs are required to disclose the use of confidential documents and the details regarding the accompanying communications with treating physicians. *See* Case Management Order 3E(i), Doc. No. 378; *see also*, February 14, 2019 Transcript, at 16:19-32:23.[3] Finally, and most importantly, the treating physicians will be under oath, and Defendants are free to explore with the physicians, during the depositions, the nature of their pre-deposition contacts with Plaintiffs' counsel.

---

[3] This Court considered arguments regarding *ex parte* communications with treating physicians previously and, while the issue was presented in a slightly different manner, it is important to point out that safeguards have already been considered and implemented—at Defendants' request. On November 20, 2017, the parties submitted letter briefs to the Court regarding Plaintiffs' counsels' ability to share "Confidential" documents with treating physicians. *See* D. Todd Matthews, Plaintiffs' Position Supporting Amendment of CMO 3E (Nov. 20, 2017) (attached as "Exhibit B"); *see also*, Hugh J. Turner, Jr., Defendants' Position Paper – Opposing Amendment of the Protective Order (Nov. 20, 2017) (attached as "Exhibit C"). In their letter, Defendants opposed the amendment of the protective order citing concerns of "fundamental fairness" and "undue influence." Exhibit C, at 1-2.

This Court heard arguments during the December 14, 2017 status conference and issued an informal ruling allowing Plaintiffs to show confidential documents to treating physicians *ex parte*. *In re: Atrium Medical Corp. C-Qur Mesh Products Liab. Litig.,* No. 16-md-02753-LM, Transcript of Status Conference, at 16:19-32:23 (D.N.H. Dec. 14, 2017) ("December 14, 2017 Transcript"). Based on Defendants' arguments and request for notice, this Court imposed the following conditions: Plaintiffs must identify any confidential documents shown to Defendants; Plaintiffs must disclose the date, duration, and participants in the communications; and treating physicians must execute the protective order. *Id.*, at 27:25-28: 4; 31:17-32:6. *See also*, Case Management Order 3E(i), Doc. No. 378.

Significantly, Defendants had until December 21, 2017 to file a formal motion on this issue yet they chose not to. *See* Procedural Order, Doc. No. 359 (Dec. 15, 2017). Rather, over a year later, Defendants now raise some of the very same arguments in the instant dispute—but now they seek a supplemental remedy without any additional justification. *Compare*, February 14, 2019 Transcript, at 13:24-14:2 ("What happens in these situations is documents and other information can be presented in—you know **they're good advocates right**—but in a one-sided way to a doctor, and the doctor doesn't have the other side[.]") (emphasis added); *with* Ex. C at 3 ("Plaintiffs' plan to disclose Atrium's Confidential Information to plaintiffs' treating physicians in an *ex parte* setting fails to balance Atrium's right to have the opportunity to depose key fact witnesses prior to any **undue influence** being exerted upon them by Plaintiffs' **skilled advocates**.") (emphasis added); *and* December 14, 2017 Transcript, at 16:19-32:23 (requesting advance notice regarding pre-deposition communications with treating physicians).

The Northern District of Illinois recently considered and rejected arguments that are similar to Defendants' in this case because of the already available safeguards. *In re Testosterone*, 167 F.Supp.3d at 938. There, like here, defendant requested that the court permit it to examine each physician first during depositions because of plaintiffs' pre-deposition contacts. *Id.* The Northern District of Illinois rejected defendant's argument, finding that "disclosure of plaintiffs' counsel's pre-deposition contacts, combined with the opportunity to cross-examine, is sufficient to allow appropriate determination of the weight to be given to a physician's testimony." *Id.* Here, like in that case, Defendants have access to information and are entitled to probe the deponent regarding his or her pre-deposition contacts with Plaintiffs' counsel and what, if any, influence occurred during those contacts.

As the Eastern District of Louisiana stated: "a strong dose of cross-examination [i]s the cure for Defendants' perceived ills[.]" *In re: Xarelto*, 2016 U.S. Dist. LEXIS 30822, at *19 (considering whether to allow *ex parte* contacts with treating physicians in a pharmaceutical MDL). The Northern District of Illinois and the Eastern District of Louisiana are not alone; other MDL courts have also found the availability of plaintiff's information, information regarding the pre-deposition contacts, and cross-examination to be significant when reviewing defendant's claims of unfairness. *See e.g.*, *In re: Benicar*, 2016 WL 1370998, * 4 ("Defendants are also protected because they are free to question plaintiffs' physicians at their depositions"); *see also*, *In re Kugel Mesh*, Ex. A, at 3 (noting that defendants are able to fully explore pre-deposition conversations during the deposition); *see also, In re Vioxx Prods. Liab. Litig.*, 230 F.R.D. 473, 477 (E.D. La. July 21, 2005) (noting that defendants still have access to information and are able to question the physician). Thus, Defendants' requested relief is unnecessary and should be denied.

7

### C. Multiple depositions are generally prohibited and would be wasteful.

Remarkably, Defendants take the position that their request for priority questioning "applies only to discovery depositions[,]" seemingly suggesting that both discovery and trial depositions will ordinarily occur in these cases. Def. Mem., at 5. Yet, this Court's Case Management Order 3B provides, quite plainly: "[a]s a general rule, no witness should be deposed on the same subject more than once in this litigation. Second depositions on **new subject matter** shall be permitted only upon consent of the parties or an order of this Court issued for good cause shown." Case Management Order No. 3B, Doc. No. 41, at ¶3 (emphasis added). Far from contemplating discovery and trial depositions for each deponent, this provision indicates that the general rule will be one deposition per witness, unless there is good cause to explore a new area of inquiry with that deponent. *See id.* Because Case Management Order 3B generally precludes taking a discovery and trial deposition of each treating physician, Defendants' reliance on cases evaluating priority questioning in discovery depositions is misplaced. *See* Defendants' Exhibit 4, Doc. No. 1084-4 ("Def. Ex. 4") ("This order applies to discovery depositions only."); *see also*, Defendants' Exhibit 5, Doc. No. 1084-5 ("Def. Ex. 5") (defendants question first in discovery depositions); *see also*, Defendants' Exhibit 6, Doc. No. 1084-6 ("Def. Ex. 6") (defendants go first in discovery depositions if certain additional conditions are met).

Undoubtedly, Case Management Order No. 3B was drafted in recognition of the fact that taking two depositions of every treating physician of every plaintiff would be a massive waste of time, effort, and resources. This sort of wasteful activity runs counter to the efficiencies an MDL is intended to achieve. Indeed, "[i]n planning and implementing case management [in complex litigation and MDLs], the court should keep in mind the goal of bringing about a just resolution as speedily, inexpensively, and fairly as possible." David F. Herr, MANUAL FOR COMPLEX

LITIGATION ANN. §10.12, 17 (4th ed. 2018). *See also*, Fed. R. Civ. P. 1 (2019) ("Federal courts … are required to construe, administer, and employ the Rules so as to achieve the just, speedy, and inexpensive determination of each civil action."). This is particularly the case with "[d]epositions …[, which] tend to be the most costly and time-consuming activity in complex litigation. The judge should manage the litigation so as to avoid unnecessary depositions[.]" *Id.*, at §11.45, 85. Because duplicative depositions are precluded and would be wasteful, Defendants' Motion should be denied.

### D. Plaintiffs have the burden of proof in these cases.

Plaintiffs have the burden of proof in these cases and the videotaped trial depositions will be paramount to Plaintiffs' case-in-chief. Accordingly, it is important that Plaintiffs have priority questioning. *See* February 14, 2019 Transcript, at 22:7-15. In response to this Court's preferred ruling, Defendants posit, "Plaintiffs can conduct what they consider to be a trial examination during the deposition." Def. Mem., at 4. Yet again, Defendants seek the least efficient option. Practically speaking, Plaintiffs will be compelled to either replicate innocuous background questions that Defendants have undoubtedly already asked—wasting the limited time of the parties and increasing the doctor's bill—or risk having an unpolished and confusing presentation of evidence at trial. On the other hand, allowing Plaintiffs' counsel to question first—as they do at trial—will make the depositions more efficient and the evidence easier to follow at trial.

Plaintiffs' priority in trial depositions was recognized by Judge Temple in his order: "A videotaped trial deposition would proceed in the normal order. Direct examination by Plaintiff's Counsel; cross-examination by defense counsel; and re-direct by plaintiff's counsel." Def. Ex. 4. Further, this principle is underscored in two other case management orders provided by Defendants. *See* Def. Ex. 5 (plaintiffs may take trial depositions); *see also*, Def. Ex. 6 (plaintiffs

entitled to question first in non-discovery depositions and in certain discovery depositions). As in those cases, Defendants should not be afforded priority questioning in trial depositions here.

## IV. CONCLUSION

For the foregoing reasons and for those stated during the February 14, 2019 status conference, Plaintiffs respectfully request that Defendants' Motion be denied and the Court's informal ruling regarding priority questioning be affirmed.

Dated: March 4, 2019

Respectfully submitted,

*/s/ Jonathan D. Orent*
**MOTLEY RICE, LLC**
Jonathan D. Orent
55 Cedar Street, Suite 100
Providence, RI 02903
TEL: (401)457-7723
FAX: (401)457-7708
jorent@motleyrice.com

**UPTON & HATFIELD LLP**
By: */s/ Susan Aileen Lowry*
Susan Aileen Lowry (NHBA 18955)
10 Centre Street, P.O. Box 1090
Concord, NH 03302-1090
(603) 224-7791
slowry@uptonhatfield.com

*/s/ Russell F. Hilliard*
Russell F. Hilliard (NHBA 1159)
159 Middle Street
Portsmouth, NH 03801
(603) 436-7046
rhilliard@uptonhatfield.com

**BAILEY & GLASSER, LLP**
*/s/ David L. Selby, II*
David L. Selby, II
3000 Riverchase Galleria, Suite 905
Birmingham, Alabama 35244
Tel.: (205) 988-9253
Email: dselby@baileyglasser.com

**HOLLIS LAW FIRM, P.A.**
/s/ *Adam M. Evans*
Adam M. Evans
5100 W. 95th St.
Prairie Village, KS 66207
(913) 385-5400
(913) 385-5402 (fax)
adam@hollislawfirm.com

**GORI, JULIAN & ASSOC. P.C.**
*/s/ D. Todd Mathews*
159 N. Main St.
Edwardsville, IL 62025
(618) 659-9833
(618) 659-9834
Todd@gorijulianlaw.com

**HOLMAN SCHIAVONE, LLC**
/s/ *Anne Schiavone*
Anne Schiavone
4600 Madison Avenue, Suite 810
Kansas City, Missouri 64112
TEL: (816) 283-8738
FAX: (816) 283-8739
aschiavone@hslawllc.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this action.

Respectfully submitted,

*/s/ Jonathan D. Orent*
**MOTLEY RICE, LLC**
Jonathan D. Orent
55 Cedar Street, Suite 100
Providence, RI 02903
TEL: (401)457-7723
FAX: (401)457-7708
jorent@motleyrice.com