UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**In Re: Atrium Medical Corp. C-Qur Mesh**
**Products Liability Litigation (MDL No. 2753)**

                              **MDL Docket No. 16-md-2753-LM**
                              **ALL CASES**

**AMENDED CASE MANAGEMENT ORDER NO. 3F**
PRODUCTION OF PHYSICALLY STORED AND
ELECTRONICALLY STORED INFORMATION

      WHEREAS, in accordance with Federal Rule of Civil Procedure 26(f), counsel for Plaintiffs and Defendants (collectively, the "Parties," and each, a "Party") have met and conferred regarding application of the discovery process set forth in the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of New Hampshire to this case;

      WHEREAS, the Parties have reached agreement on certain of the issues discussed regarding such discovery;

      WHEREAS, the Parties have entered into this Stipulation and Order Concerning Protocol for Discovery of Electronically Stored Information ("Stipulation and Order") to facilitate the just, speedy, and inexpensive conduct of discovery involving Electronically Stored Information ("ESI") and to promote, to the fullest extent possible, the resolution of disputes regarding the discovery of ESI without Court intervention;

      IT IS HEREBY ORDERED that:

**I.    GENERAL PROVISIONS**

    **1.**    **Scope.**

        a)    This Stipulation and Order shall govern the discovery of documents and ESI, as described in FED. R. CIV. P. 26, 33, and 34;

        b)    Nothing in this Stipulation and Order shall be construed to supersede or alter any provision of any Federal or Local Rule, or alter or abridge any Party's rights or remedies thereunder; and

        c)    All Parties are bound by and subject to the terms of this Stipulation and Order;

d)  It is the Defendants position that the terms of this Stipulation and Order should apply equally to both Parties. The Plaintiffs do not agree that this Stipulation and Order should govern their production efforts with respect to Section I, No. 7; Section II; Section III, No 1(a)–(e); and Section IV No. 3. Once Defendants have served discovery on Plaintiffs, the Parties will have a further meet and confer and attempt to resolve this dispute. If the Parties cannot narrow this dispute at that time, the issue will be presented to the Court for resolution.

2. **Proportionality**. The proportionality standard set forth in FED. R. CIV. P. 26(b)(1) shall be applied in all matters related to discovery of ESI, including without limitation, the identification, preservation, collection, review, analysis, processing, and production of such information.

3. **Cooperation**. The Parties and their counsel will work cooperatively during all aspects of discovery to ensure that the costs of discovery are proportional to what is at issue in the case, and nothing in this Stipulation is intended to preclude the Parties from objecting to any discovery on the grounds that it is not proportional.  The failure of a Party or their counsel to cooperate will be relevant in resolving any discovery disputes and determining who shall bear the costs of discovery.

4. **E-Discovery Liaisons.**

a)  Each party has identified an e-discovery liaison who is and will be knowledgeable about and responsible for discussing matters related to its ESI.

b)  Each e-discovery liaison will be, or will have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter.

c)  The Parties will rely on the e-discovery liaisons or those designated by the liaisons, as needed, to meet and confer about matters involving ESI and to help resolve disputes without court intervention. However, no Party's e-discovery liaison will be expected or required to make decisions relating to the case without consultation with lead counsel, the Party's litigation team, and/or a client representative.  The Parties agree to work in good faith to schedule conferences concerning discovery of ESI when their e-discovery liaisons or those designated by the liaisons are available.

d)  The e-discovery liaison for Defendants shall be Emily Van Tuyl, Esq. The e-discovery liaison for Plaintiffs shall be Jonathan Orent, Esq.

5. **Relevant Time Period.** The relevant time period for the events that gave rise to this action are from January 1, 2003 through the date of the Master Complaint (the "Relevant Time Period").  Absent a specific request for information outside that time period, and good cause shown for such information, neither party will be required to search for, preserve or produce ESI outside of the Relevant Time Period.

6. **Prioritized Searching.**

   a) **Data Sources that are Reasonably Accessible.** In accordance with Fed. R. Civ. P. 26(b)(2)(B) and (C), the Parties agree that any search for potentially relevant documents and ESI shall initially involve searching for such documents in data sources within which such documents and ESI are most readily accessible.

   b) **Data Sources that are Less Accessible.** Data sources that are less accessible because of burden or cost shall only be considered for search in accordance with Fed. R. Civ. P. 26(b)(2)(B). Sources that are considered less accessible due to undue burden or cost include, but are not limited to:

   > Backup tapes and archives; backup data that is substantially duplicative of data that is more accessible elsewhere; file fragments; deleted space; slack space; fragmented space; unallocated data on hard drives; residual data; ghost files; shadowed files; swap files; random access memory or other ephemeral data; Electronic data (*e.g.*, email, calendars, contacts, notes, and text messages) sent to or from mobile devices (*e.g.*, iPhone, iPad, Android, and BlackBerry devices), provided that a copy of such electronic data is routinely saved elsewhere (such as on a server, laptop or desktop computer, or "cloud" storage); Voicemail messages, instant messaging or other real-time, transitory text transmissions that are not retained in users' email accounts; data contained on users' private computers or email accounts not issued by Defendants; on-line access data such as temporary internet files, internet histories, internet usage caches, and cookies; other forms of ESI whose preservation or collection requires extraordinary affirmative measures that are not utilized in the ordinary course of business; data in metadata fields that are frequently updated automatically; server, system, or network logs; archival data; proprietary databases (excluding reports referenced in section III(1)(f) below) ; and legacy software which is no longer maintained by a party.

   The Parties may contend that other sources of data are not reasonably accessible due to undue burden or cost, in accordance with Fed. R. Civ. P. 26(b)(2)(B).

7. **Search Methodology.**

   a) The Parties expect to employ one or more search methodologies, including possibly but without limitation the use of advanced search and retrieval technologies, to identify potentially relevant ESI, including email. The primary mechanism the Parties intend to use to conduct the review of large volumes of ESI is Technology Assisted Review ("TAR").

   b) Defendants will use a TAR process to search for relevant documents in a universe of documents consisting of files and documents from custodial and noncustodial sources that have already been collected (approximately 35 custodial sources), plus additional documents from up to four additional custodians, who shall be sales individuals from Maquet. The specific sales individuals will be agreed upon by the parties. The previously collected custodial and noncustodial sources shall be updated through the date of the Master Complaint. The Parties agree that these data sources shall be the entire universe of ESI subject to this TAR process, that this TAR process is intended to constitute the major, but not exclusive, ESI production by Defendants in this MDL, and that to the extent that Plaintiffs request additional ESI from sources other than those

3

listed in this paragraph, Defendants, at their sole discretion, shall determine the manner and method of responding to such requests, preserving all objections. With the exception of documents identified in sections 10, 11 and 12 below, no documents identified through this TAR process shall be withheld from production for reasons other than privilege. Moreover, Defendants reserve the right to conduct a pre-production review of potentially privileged documents. Finally, nothing in this Stipulation and Order shall preclude a requesting party from seeking additional ESI discovery where that party believes, in good faith, that such additional discovery is necessary, or prevent the responding party from objecting to such discovery.

        c) Defendants have also agreed to utilize all documents produced as of July 17, 2017 in the New Hampshire state court litigation styled *Jean A. Downie* v. *Atrium Medical Corporation* (Case No. 226-2013-CV-00155) as the "seed" or "training" set as part of the TAR process Defendants will utilize. Exceptions include items that do not provide good seeding material such as items with no text or with a text threshold below 600 bytes, items with over 30 megabytes of text, or items that do not contain substantive text. Should Defendants identify any other examples of improper seed set material, Defendants agree to identify such items to Plaintiffs prior to excluding them from the seed set. If a dispute arises concerning this issue, the parties will meet and confer in attempt to resolve it. If resolution is not possible, the parties will seek guidance from the Court in accordance with the dispute resolution process outlined in Case Management Order No. 3.

        d) The parties agree that Defendants' use of TAR will be subject to a reasonable validation method demonstrating compliance with 95% confidence interval and a 2% margin of error. Defendants will produce a certificate documenting compliance.

        e) To the extent that the court in the matter of *Jean A. Downie* v. *Atrium Medical Corporation* (Case No. 226-2013-CV-00155) pending in New Hampshire Superior Court overrules Defendants' objections to Plaintiffs' requests for production or otherwise compels Defendants to produce specific categories of documents not previously produced in that proceeding, Defendants will work with Plaintiffs to incorporate such documents into its TAR process in this MDL. It is the MDL Plaintiffs' position that specific categories of documents requested by the state court Plaintiffs in their Sixth Set of Requests for Production currently subject to a Motion to Compel in *Downie,* may need to be incorporated into Defendants' seed set in this MDL. Defendants object to the inclusion of such documents into the seed set. The parties have agreed to meet and confer to resolve this issue should these documents be ordered to be produced in *Downie.* The Plaintiffs shall initiate any such meet and confer by identifying the specific documents from among those ordered by the court to be produced, which the Plaintiffs wish to be included in Defendants' seed set, however Plaintiffs agree that they will not ask for all documents responsive to the state court Plaintiffs' Sixth Set of Requests for Production to be included in the seed set. If resolution of this issue is not possible, the parties will seek guidance from the Court in accordance with the dispute resolution process outlined in Case Management Order No. 3.

        f) To the extent that a producing Party decides not to use TAR for future document productions, they will notify the requesting Party, concurrently with the production of documents not produced using TAR, regarding the methodology used for the production.

    **8.** **New Hampshire State Court Document Productions.** Atrium has already identified, preserved, collected, analyzed, reviewed, processed, and produced ESI in the concurrent

state court proceedings and intends to produce these documents in this MDL upon the entry of a Confidentiality Stipulation and Protective Order, a Coordination of Litigation Order, and this ESI Stipulation and Order. Plaintiffs may, in good faith, seek additional documents in accordance with the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of New Hampshire.

9. **Privilege Log.** The Parties shall provide privilege logs in accordance with Fed. R. Civ. P. 26(b)(5).

10. **Deduplication**.

a) A Party is only required to produce a single copy of a responsive document. Parties may deduplicate stand-alone documents or entire document families vertically within each custodian or horizontally (also referred to as globally) across custodians. Documents are exact duplicates if they have matching MD5 or SHA-1 hash values.

b) Parties also may deduplicate stand-alone documents or entire document families using near-duplicate identification technology, provided, however, that only documents identified by such technology as 100% near-duplicates shall be deduplicated. For purposes of this paragraph, 100% near-duplicates are documents that have identical text content, embedded files, and attachments. 100% near-duplicates may have different MD5 or SHA-1 hash values.

c) When comparing document families, if a parent document is an exact duplicate or 100% near-duplicate but one or more attachments or embedded files are not exact duplicates or 100% near-duplicates, neither the attachments nor embedded files, nor the parent document, will be deduplicated.

d) Attachments to emails shall not be eliminated from their parent emails. Where a stand-alone document is an exact duplicate or 100% near-duplicate of an email attachment, the email attachment must be produced and the stand-alone document may be deduplicated.

11. **Known Software Files**. Known software files identified in the National Software Reference Library database maintained by the National Institute of Standards and Technology need not be collected, processed, reviewed or produced.

12. **Email Threads.** Where individual email messages are part of a single "thread," a Party is only required to produce the most inclusive message and need not produce earlier, less inclusive email messages that are fully contained, including attachments, within the most inclusive email message. For the avoidance of doubt, only email messages for which the parent document and all attachments are contained in the more inclusive email message will be considered less inclusive email messages that need not be produced; if the later message contains different text (such as where the later message adds in-line comments to the body of the earlier message), or does not include an attachment that was part of the earlier message, the earlier message must be produced. Where an email thread is withheld from production under a claim of privilege, the Party's privilege log should reflect only the most inclusive message.

**II.     PRODUCTION OF PHYSICALLY STORED INFORMATION (NON-ESI).**

    **1.     Format.** With the exception of documents previously collected and which do not meet such specifications, each hardcopy document shall be scanned as single page, Group IV compression TIFF images using a print setting of at least 300 dots per inch (DPI). Each image shall have a unique file name, which is the Bates number of the first page of the document. To the extent technically available through the use of purely automated methods, and provided that no extra costs be incurred, original document orientation shall be maintained (i.e., portrait to portrait and landscape to landscape). Each document shall be produced intact (single documents shall not be split into multiple records).

    **2.     Coding.** The following information shall be produced and provided in the data load file at the same time that the TIFF images are produced. Each metadata field shall be labeled as listed below:

    (a)     Beginning Production Number (ProdBeg),
    (b)     Ending Production Number (ProdEnd),
    (c)     Custodian/Source,
    (d)     Confidentiality.

**III.     PRODUCTION OF ELECTRONICALLY STORED INFORMATION**

    **1.     Production Format for ESI.**

    a)     Documents previously produced in the concurrent state court litigation will be produced in the manner in which they were previously produced. Any documents not previously produced in the concurrent state court litigation will be produced as follows:

    b)     Documents will be produced as TIFF images. Each image shall have a unique file name, which is the Bates number of the first page of the document. As indicated below, native files will be produced in lieu of TIFF files for spreadsheets, media files, and other file types for which it is impractical to produce TIFF images, and will be produced in their complete original condition, and may not be altered in any way for litigation purposes. Documents will be produced with the metadata fields listed below exported into a delimited load file for Relativity, Concordance, and such other industry-standard electronic discovery platforms as the parties may agree upon. All TIFFs produced by any party in this matter will be single page Group IV TIFF format, 300 dpi quality or better. Image file names will be identical to the corresponding Bates numbered images, with a ".tif" file extension. TIFF documents shall be produced in black and white in the first instance. If a document contains color and that color is necessary to decipher the meaning, context, or content of the document, the producing party shall honor reasonable requests for either the production of the original document for inspection and copying or production of a color image of the document. Nothing in this Stipulation shall be construed to impose an obligation on any party to add functionality to a document where such functionality does not exist in the document's native format. It shall be the burden of the party claiming that documents lack functionality or do not exist in a native format to establish such facts and related positions shall be conveyed under oath.

c) **Metadata.** The following metadata fields will be produced in a delimited text file, to the extent the information exists:

| *Field* | *Data Type* | *Paper* | *Native Files & Email Attachments* | *Email* |
|---|---|---|---|---|
| ProdBeg | Integer - Text | Starting Bates # | Starting Bates # | Starting Bates # |
| ProdEnd | Integer - Text | Ending Bates # | Ending Bates # | Ending Bates # |
| ProdBegAttach | Integer - Text | Starting bates # of document family | Starting bates # of document family | Starting bates # of document family |
| ProdEndAttach | Integer - Text | Ending bates # of document family | Ending bates # of document family | Ending bates # of document family |
| Attachbates | Integer - Text | bates # range of document all attachments | bates # range of document all attachments | bates # range of document all attachments |
| BegAttach | Integer - Text | Beginning bates # for each individual attachment | Beginning bates # for each individual attachment | Beginning bates # for each individual attachment |
| EndAttach | Integer - Text | End bates # for each individual attachment | End bates # for each individual attachment | end bates # for each individual attachment |
| AttachNames | Integer - Text | Name of each attachment | Name of each attachment | Name of each attachment |
| AttachCount | Integer - Text | Number of attachments | Number of attachments | Number of attachments |
| E-mail Outlook Type | Integer - Text |  | Identification as to whether an outlook item is a calendar entry, task list item, email etc. | Identification as to whether an outlook item is a calendar entry, task list item, email etc. |
| PGCOUNT | Integer - Text | Number of pages | Number of pages | Number of pages |
| ParentMSGID | Integer - Text | Identification of the unique identifier of | Identification of the unique identifier of the | Identification of the unique identifier of |

7

| | | the parent message/ document | parent message/ document | the parent message/ document |
|---|---|---|---|---|
| PST/OST filename | Integer - Text | | | |
| Custodian | Text | Name of person the document was collected from | Name of person the document was collected from | Name of person the document was collected from |
| Folder | Text | | File path/folder structure for the original native | File path/folder structure for the original native file |
| From | Text - paragraph | | | Sender of message |
| To | Text – paragraph | | | Recipients of message |
| CC | Text – paragraph | | | Copied recipients |
| BCC | Text – paragraph | | | Blind copied recipients |
| Subject | Text - paragraph | | | Subject of message |
| Date_Sent | Date | | | Date message sent |
| Time_Sent | Time | | | Time message sent |
| FileName | Text - paragraph | | Name of original file | Name of original file |
| FileExtension | Text | | Extension of original file | Extension of original file |
| FileSize | Integer - Text | | Size of the file | Size of the file |
| Date_Created | Date/Time | | Date file was created | |
| Date_LastMod | Date/Time | | Date file was last modified | |
| LastModifiedBy | Text | | Identity of last individual modifying document | |
| TIMECREATED | Date/Time | | Date file was created | |

| | | | | |
|---|---|---|---|---|
| TimeLastModified | Date/Time | | Time file was last modified. | |
| Title | Text - paragraph | | Title from document metadata | |
| Author | Text - paragraph | | Document author from metadata | |
| Confidentiality | Text | Any confidentiality designation asserted on the document | Any confidentiality designation asserted on the document | Any confidentiality designation asserted on the document |
| MD5 Hash | Text | | MD5 or SHA-1 Hash Value of document | MD5 or SHA-1 Hash Value of document |
| NativeLink | Text - paragraph | | Path including filename to the associated native file if produced (Relative Path) | Path including filename to the associated native file if produced (Relative Path) |
| TextLink | Text - paragraph | Path including filename to the associated searchable text file (Relative Path) | Path including filename to the associated searchable text file (Relative Path) | Path including filename to the associated searchable text file (Relative Path) |
| Flags | Text | | | Flags |
| Importance | text | | | Exclamation point or other feature on email denoting high priority |
| Attach | Text | Notification that the document being reviewed is an attachment | Notification that the document being reviewed is an attachment | Notification that the document being reviewed is an attachment |
| E-mail Folder | Text | | | Identification of the path and folder where the email was stored. |
| Redacted | text | Any redaction made to the document | Any redaction made to the document | Any redaction made to the document |
| Redacted Reason | Textparagraph | Explanation for redaction | Explanation for redaction | Explanation for redaction |

9

| DuplicateFilePath | Text | | | |
|---|---|---|---|---|
| DuplicateMailFolder | Text | | | |
| DupeCustodian | Text | | Name of Custodian in possession of duplicate file | Name of Custodian in possession of duplicate file |
| Defendant Name | Text | Name of Defendant producing document | Name of Defendant producing document | Name of Defendant producing document |

    d)  **Bates Numbers.** The producing party will brand all TIFF images in the lower right-hand corner with its corresponding Bates number, using a consistent font type and size. The Bates number must not obscure any part of the underlying image. If the placement in the lower right-hand corner will result in obscuring the underlying image, the Bates number should be placed as near to that position as possible while preserving the underlying image.

    e)  **ESI Impractical to Produce in TIFF Format.** As noted above, certain categories of ESI are more easily reviewed in native format and therefore will not be produced in TIFF format. These file types include, but are not limited to, Spreadsheet Files such as Microsoft Excel (*.xls, *.xlsx, *.csv), database files including Microsoft Access (*.mdb), presentation files including Microsoft PowerPoint files (.ppt, .pps, .pptm), word processing files including Microsoft Word files and multimedia files including audio and video files.

    f)  **Enterprise Databases.** To the extent that any Party requests information that is stored in an enterprise database or database management system (for example, Oracle, SQL Server, DB2), the Parties will agree upon production of data from such sources in existing report formats, or report formats that can be developed without undue burden or cost.

    g)  **Structured Data.** The parties agree to negotiate separately regarding the production of information contained within structured database files and shared drives.

  **IV.**  **OTHER TERMS**

    **1.**  **Use of ESI Produced In Native Format.** The Parties agree that prior to using any document produced in native format (including without limitation at any hearing or deposition), the Party seeking to make such use will provide the Bates number and MD5 or SHA-1 hash value to the producing Party, sufficiently in advance of such use that the producing Party can confirm that the file to be used is the same as the file produced. Should any document produced in native format be printed to *.tiff image or hard copy, the unique production number and any applicable confidentiality designation shall be placed on each page of such *.tiff image or hard copy. Both the unique production number for the *.tiff image or hard copy and the MD5 or SHA-1 hash value of the native file from which the *.tiff image or hard copy was generated will also be placed on the first page of the *.tiff image or hard copy for identification purposes. The Parties shall meet and confer prior to trial to come to agreement on the format in which native files shall be used at trial.

**2.     Authenticity and Admissibility.**  Nothing in this protocol shall be construed to affect the authenticity or admissibility of any document or ESI.  All objections to the authenticity or admissibility of any document or ESI are preserved and may be asserted at any time.

**3.     Confidential Information.**  The Parties incorporate the provisions of any protective order(s) concerning protection of confidential information that may be entered by the Court in these proceedings.  For the avoidance of doubt, nothing in this Stipulation and Order shall supersede or alter any provision of the protective order(s) concerning confidential information that may be entered by the Court in these proceedings.

a)     The confidentiality treatment level for any item will be provided in the field entitled "Confidentiality." For items with no confidentiality requirements, the field will be left blank.

b)     The producing party will brand any confidentiality endorsements in a corner of any TIFF images representing the produced item. Those endorsements must be in a consistent font type and size, and must not obscure any part of the underlying image or Bates number. For documents produced in native format, a one page slip sheet will be produced stating that the document is produced in native format. This slip sheet will also indicate the confidentiality designation of the native file.

**4.     Reimbursement of Costs.**  This Stipulation and Order shall have no effect on any producing Party's right to seek reimbursement for costs consistent with the Federal Rules of Civil Procedure associated with collection, review, or production of documents or ESI.

**5.     Reservation of Rights.**  Nothing in this Stipulation and Order shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorneyclient privilege, work-product doctrine, or any other applicable privilege or immunity. The Parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of documents and ESI. Nothing in this Stipulation and Order is intended or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or third parties to object to a subpoena.

**6.     Privileged or Trial Preparation Materials.**

a)     Some of the ESI and other documents produced in this action may contain attorney-client privileged communications or other information protected as "privileged" or protected by the attorney work-product privilege and not subject to discovery under the Federal Rules of Civil Procedure or other applicable source of law ("Protected Material").  The Parties acknowledge that, despite each party's best efforts to conduct a thorough pre-production review of all ESI and other documents, given the amount of information likely to be exchanged in this case, some Protected Material may be inadvertently disclosed to the other party during the course of this litigation. Such disclosed Protected Material shall be handled in accordance with the parties' Confidentiality Stipulation and Protective Order. Counsel for the Parties recognize that the applicable rules of professional conduct may impose obligations on the Party requesting discovery, with respect to materials that they know or reasonably should know have been produced inadvertently.

11

b) The Parties therefore agree that should Protected Material be inadvertently produced during discovery, both Parties agree to voluntarily return any and all inadvertently-produced material protected from disclosure to the other Party, destroy any copies made, and agree such inadvertent disclosure will not constitute a general waiver of privilege. Any Protected Material produced by a producing Party remains the property of the producing Party. The requesting Party shall promptly notify the producing Party of its possession of the Protected Material, return any and all such Protected Material to the producing Party, destroy any copies made, agree that such disclosure will not constitute a waiver of any privilege, and shall make no use or disclosure of the Protected Material other than to the producing Party.

7. **Preservation of Potentially Relevant Information.** Each Party shall be responsible for taking reasonable and proportional steps to preserve potentially relevant documents and ESI within its possession, custody, or control.

8. **Continuing Obligation to Meet and Confer.** To expedite discovery of electronic evidence and reduce each parties' costs, the parties' attorneys and IT professionals will informally cooperate and discuss procedures or protocols to facilitate identification, retrieval and production of computerized information. The Parties will work with one another in good faith to resolve any issues, disputes or objections that arise in connection with electronic discovery issues before raising such matters with the court. Issues shall be raised promptly in writing, and the parties shall have good faith discussions to attempt to resolve the matter. The responsibility shall be continuing, unless otherwise ordered by the Court.

9. **Load File.** The Parties shall produce load files in an industry standard format. If there are any disputes concerning the production of load files, the Parties shall meet and confer in attempt to resolve these issues.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

October 16, 2019

cc: All Count of Record